UNITED STATES of America,
Plaintiff–Appellee,

v.

UTEX INTERNATIONAL
INC., Defendant,

and

Sentry Insurance Company,
Defendant–Appellant.

No. 87–1414.

United States Court of Appeals,
Federal Circuit.

Sept. 8, 1988.

Barbara M. Epstein, Commercial Litigation Branch, Dept. of Justice, New York City, argued for plaintiff-appellee. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office.

William E. Melahn, Follick & Bessich, Boston, Mass., argued for defendant-appellant. With him on the brief was Angela Violin.

Before FRIEDMAN, DAVIS * and NEWMAN, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In this action on a surety bond brought under 28 U.S.C. § 1582(2), Sentry Insurance Company appeals the judgment of the United States Court of International Trade,

---

* Judge Davis, who died on June 19, 1988, took no part in this decision.

awarding liquidated damages to the United States in the amount of $11,718.[1] We reverse.

### Background

Utex International Inc. ("Utex") imported from India, through the Port of New York, 115 cartons of frozen shrimp. On February 1, 1980 the goods were released to Utex on the posting by Sentry Insurance Company ("Sentry") of a Single Entry Immediate Delivery and Consumption Entry Bond.

The Customs Service provided samples to the Food and Drug Administration ("FDA"). On February 6, 1980, a "Notice of Detention and Hearing" was issued to Utex by the FDA, copy to the Customs Service, stating that "the merchandise must be held intact pending final decision as to whether it shall be admitted or refused admission." The Notice also bore the statement: "The article is violative within the meaning of 801(a)(3) [of the Food, Drug and Cosmetics Act of 1938 as amended, 21 U.S.C. § 381(a)(3)] in that it appears to contain Salmonella, and/or filth, and/or appears to be decomposed." [2]

Despite this Notice, the entry was liquidated by the Customs Service on February 29, 1980. The entry was not reliquidated.

On March 12, 1980 the Customs Service issued to Utex a "Notice of Refusal of Admission", which stated that the goods were in violation of Section 801(a)(3) and required Utex to export the shrimp under Customs' supervision within 90 days. Utex did not comply. On December 9, 1980 Customs sent Utex, with a copy to Sentry, a "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment." The sum was not paid.

On June 27, 1984 Customs demanded payment of liquidated damages from Utex and/or Sentry, and on June 5, 1986 the government filed suit against both Utex and Sentry. Utex made no answer or appearance. Sentry was held liable on the entry bond, and takes this appeal.

The controlling question of law is whether the final liquidation of the goods discharged the surety from liability on the entry bond.

### A. Liquidation

■ 19 U.S.C. § 1514(a) provides that all administrative decisions as to value, classification, duty, exclusion, liquidation, etc., including the legality of all orders and findings entering into such decisions, are "final and conclusive upon all persons (including the United States and any officer thereof)" unless the decision is timely protested. Sentry asserts that these decisions are subsumed in the final liquidation and that, because the goods were neither reliquidated nor a protest filed, the government as well as the surety are bound thereby.

The Court of International Trade held that liquidation and reliquidation relate only to the computation and imposition of duties, and thus that the finality expressed in § 1514(a) does not apply to decisions on admissibility. *Utex*, 659 F.Supp. at 252. The court cites in support *United States v. American Motorists Insurance Co.*, 10 CIT ——, slip op. 86–7 (1986) [available on WESTLAW, 1986 WL 8339], wherein the surety was held liable for payment of customs duties when the importer's checks were dishonored, despite intervening liquidation. The issues are not at all comparable, for the obligation to pay the duties owed had vested, and the only question was that of the dishonored checks. 19 U.S.C. § 1648; 19 CFR § 141.1(b). This decision sheds no light on the issues raised herein—other than to point up the absence of authority for the court's holding that liquidation is unrelated to admissibility.

It is long-standing customs law that when goods are finally liquidated they are deemed admissible, as summarized in *R.*

---

1. *United States v. Utex Int'l Inc.,* 659 F.Supp. 250 (Ct.Int'l Trade 1987).

2. The FDA apparently had promptly ascertained that frozen shrimp from India was "blocklisted". According to *Seabrook International Foods, Inc.*

*v. Harris,* 501 F.Supp. 1086, 1088 (D.D.C.1980), *aff'd sub nom. Continental Seafoods, Inc. v. Schweiker,* 674 F.2d 38 (D.C.Cir.1982), "blocklisted" goods are "automatically detained".

Sturm, *Customs Law & Administration* § 8.3 *Finality of Liquidation* at 32, (3d ed. 1982), discussing 19 U.S.C. § 1514(a):

All findings involved in a district director's decision merge in the liquidation. It is the liquidation which is final and subject to protest, not the preliminary findings or decisions of customs officers. *Commonwealth Oil Refining Co., Inc. v. United States*, 67 Cust.Ct. 155, C.D. 4267, 332 F.Supp. 203 (1971) and cases cited; *Dart Export Corp. v. United States*, 43 CCPA 64, C.A.D. 610 (1956), *cert. denied*, 352 U.S. 824, 88 S.Ct. 33, 1 L.Ed.2d 48 (1956).

In harmony with the finality of liquidation, the customs regulations require that liquidation be suspended when the goods are food, drugs, and other articles subject to FDA inspection:

19 CFR § 159.55 Possible prohibited food, drugs, or other articles.

(a) *Suspension of liquidation.* The liquidation ... shall be suspended until it is determined whether admission of the merchandise into the United States is permitted under the law.

Other regulations require that Customs demand the return of inadmissible goods that had been released from Customs custody, and that such demand be made before liquidation has become final. 19 CFR § 141.113(b):

If at any time after entry the district director finds that any merchandise contained in an importation is not entitled to admission into the commerce of the United States for any reason not enumerated in paragraph (a) of this section [relating to marking of certain merchandise], he shall promptly demand the return to Customs custody of any such merchandise which has been released.

19 CFR § 114.113(f):

A demand for the return of merchandise to Customs custody shall not be made after the liquidation of the entry covering such merchandise has become final.

It is undisputed that Customs' liquidation on February 29, 1980 of Utex's 115 cartons of frozen shrimp was in violation of these regulations. These requirements enable Customs to implement a FDA refusal of admittance while the goods are still under detention by the importer and while they are subject to Customs' authority. The government's argument that the purpose of these regulations is simply to save Customs the bother of assessing duties and later making a refund, and not in recognition of any legally significant finality of liquidation, is contrary to the body of customs law.

The government itself calls the liquidation of Utex' shrimp "premature", using the word of the Court of Customs and Patent Appeals in *United States v. A.N. Deringer*, 593 F.2d 1015, 1020, 66 CCPA 50 (1979). The situation in *Deringer* was, in pertinent part, similar to that at bar. In appeal No. 78–8 in *Deringer* the foods were liquidated a few days before issuance by Customs of a Notice of Refusal of Admission based on FDA inspection. The Court of Customs and Patent Appeals held that the liquidation did not conform to the regulation (the predecessor of 19 CFR § 159.55(a)) that requires suspension of liquidation until admissibility is determined, because the liquidation preceded the statutory notice of refusal required by 21 U.S.C. § 381(a). *Id.* at 1019. However, the appellate court rejected the holding of the Customs Court that the liquidation was void *ab initio*, and held that neither the legality nor the correctness of the liquidation could be disturbed because it had not been challenged by appropriate and timely procedure. *Id.* at 1020. The court held that absent timely protest as required by 28 U.S.C. § 1582(c), or reliquidation in accordance with statute and regulation, the matter should have been dismissed by the Customs Court for lack of jurisdiction. *Id.* at 1021.

A similar ruling was made by this court in *Omni U.S.A., Inc., v. United States*, 840 F.2d 912 (Fed.Cir.1988). The Customs Service, in an admitted error, liquidated an entry at an incorrectly high duty, although it was required to have held the liquidation in suspense. This court held that the error

could be corrected only within the terms of the statute, and that:

> Since nobody brought the errors to the attention of the appropriate customs officers within a year of the date of liquidation, authority to correct them lapsed according to the term of section 1520(c)(1). . . .

*Id.* at 914. This court rejected the proposition that the liquidation, since *ultra vires,* was void, stating "our want of enthusiasm for the void liquidations doctrine matches that of the *Deringer* court", and concluded that upon expiration of the time prescribed in the statute to correct errors, "jurisdiction to effect correction under that statute had lapsed." Id. at 915, 916.

Both the *Omni* and *Deringer* courts held that the erroneous liquidation could be corrected only by following the statutory procedures, and that failure to do so within the period set by statute leaves the liquidation final. *See also, e.g., National Corn Growers Ass'n. v. Baker,* 840 F.2d 1547 (1988); *United States v. Uniroyal, Inc.,* 687 F.2d 467 (CCPA 1982). These decisions carried forward the established law that the statutory procedures of liquidation, reliquidation, and timely protest control the finality of the importation process.

We need not discuss what remedial action may have been available to the Customs Service, for it essayed none at all. There was no voluntary reliquidation within ninety days in accordance with 19 U.S.C. § 1501, no protest filed under 19 U.S.C. § 1514 or § 1516 (during which the government might have raised the question of finality), no reliquidation within one year to correct clerical error, mistake, or inadvertence under 19 U.S.C. § 1520(c)(1), or within two years on account of fraud under 19 U.S.C. § 1521. The liquidation was final.

The principal government argument, and basis for the decision of the Court of International Trade, is that the exclusion of food based on FDA determination of inadmissibility is not an exclusion under the customs law, 19 U.S.C. § 1514(a)(4), and thus that it is immaterial that the entry was finally liquidated by Customs for that was an act under the customs law. On this basis the trial court held that the finality of liquidation does not bar recovery of damages for the failure of Utex to reexport the shrimp upon receipt of the Notice of Refusal of Admission after liquidation. The court stated that to hold otherwise "would mean that Customs determines that food is contaminated and orders its exportation, which is clearly erroneous." *Utex,* 659 F.Supp. at 253.

We agree that the Customs Service has no authority over the correctness of the FDA's analysis of the shrimp; but the correctness of the decision to deny admission is not at issue. The long history of activity and jurisprudence in this area [3] shows that it is Customs' responsibility to carry out the FDA decisions, in accordance with customs law and regulation. The various statutes and regulations make clear that Customs is the enforcement arm of the process wherein admissibility is determined by the FDA. It is the Customs Service that is responsible for liquidation, and for suspension of liquidation pending determination of admissibility by the FDA. If it were intended that the FDA be excluded from the statement in 19 U.S.C. § 1514 that Customs' decision of liquidation "shall be final and conclusive upon all persons (including the United States and any officer thereof)" unless timely protested, plain language would be required to achieve such an exclusion. There is no authority supporting such an intended meaning, and no suggestion that Congress intended to change or dilute the classic finality of importation decisions.

We express grave concern that Customs' erroneous liquidation of the entry, in violation of law and regulation, defeated the legislative purpose of protecting the consumer by assuring reexportation or destruction of contaminated foods. The

---

3. The Customs Service has been charged with implementation of import exclusion laws of adulterated foods since 1848. See the historical summary in Customs Ruling 86–21, 20 Cust. Bull. No. 33, pp. 21–34, at 22–27 (Aug. 20, 1986); supplemented by General Notice, 21 Cust. Bull. No. 4, pp. 13–14 (Jan. 28, 1987).

record before us does not reveal the ultimate disposition of the shrimp, although it suggests that Utex did not place the shrimp into commerce. The United States states in its brief that: "To urge that the proper consequence of a premature duty assessment by Customs is to permit the release of tainted food into the commerce of the United States defies common sense, in that release would clearly be hazardous to the public health and welfare." We totally agree. The public obligation that Congress entrusted to FDA and the Customs Service was not fulfilled. The governmental error can not be condoned. However, this surety did not insure against governmental error.

In this suit against a surety on its entry bond, the surety's liability arises under and is in terms of the customs law. As observed in *Deringer*, 593 F.2d at 1020, both the legality and correctness of a liquidation are determined, at least initially, through the protest procedure, and "any challenge to the propriety of a liquidation [not specifically excepted] must be through this statute." *See, e.g., Guy B. Barham Co. v. United States*, 35 CCPA 138, 141 (1948) (attempted reliquidation by government, due to governmental error, void *ab initio* because untimely); *John S. Phipps v. United States*, 22 CCPA 595, 602, T.D. 47601 (1935) (although the appraisement may have been illegal, the government could not cancel or reliquidate the liquidation after the time set by statute); *Gallagher & Ascher v. United States*, 21 CCPA 313 (1933) (even if the liquidation were illegal, it became final absent protest); *see also Hambro Automotive Corp. v. United States*, 603 F.2d 850, 853 (CCPA 1979) (refusals to reliquidate final absent timely protest); *United States v. Nils A. Boe*, 543 F.2d 151, 156 (CCPA 1976) (refusing to permit protest to classification prior to liquidation).

We do not hold that the liquidation was correct. But absent timely reliquidation or protest it was final as to all aspects of the entry. The importer, the surety, and the government are bound by and have the right to rely on the finality of liquidation. Sentry's liability on the bond was thus dis-

charged when the entry was finally liquidated.

## B. The Entry Bond

■ The government argues that paragraph 7 of the entry bond contractually establishes the surety's liability independent of the finality of liquidation.

The provisions of the bond that are specifically directed to inadmissible goods are paragraphs 4 and 7. Paragraph 4 requires redelivery, on demand by the Customs Service, of goods that are found not admissible, and the payment of liquidated damages if such redelivery is not made. By regulation, 19 CFR § 114.113(f) quoted *supra*, no such demand shall be made after liquidation of the entry has become final; and apparently in this case no formal demand for redelivery was made, *see* 19 CFR § 141.113(e) (requiring that such demand be made on Customs Form 4647 or by letter). The government does not dispute that there is no liability under paragraph 4 of the bond.

Paragraph 7 provides:

7. And if in the case of any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States, the above-bounden principal *after proper notice* shall mark, label, clean, fumigate, destroy, export, and do any and all other things in relation to said merchandise that may be lawfully required, and shall hold the said merchandise for inspection and examination ...; or in default thereof, shall pay to the director of customs as liquidated damages.... [emphasis added]

Sentry emphasizes the "proper notice" requirement of paragraph 7, and argues that this paragraph is subject to the notice requirements and safeguards of 19 CFR § 141.113. Sentry states that the purpose of paragraph 7 is to require the importer to comply with lawful requirements to bring the merchandise into compliance or to export or destroy the goods, as appropriate; but that it does not effect a release of the

government from the governing regulations.

The government argues that since paragraph 7 does not state that there must be a demand for redelivery and that the demand must be "in accordance with the law and regulations in effect", as paragraph 4 states, then no such constraint bars liability of the importer and the surety under paragraph 7. Such reading of the entry bond does not accord with the simple rule that the provisions of a contract will be read as a whole, absent clear expression of contrary contractual intent. *Restatement, Second, Contracts* § 202(2) ("A writing is interpreted as a whole"); 4 S. Williston, *A Treatise on the Law of Contracts* § 601 (W. Jaeger 3d ed. 1961).

The provisions of this entry bond are not easily strained into a reading whereby paragraph 7, directed to actions to be taken after goods have been found to be inadmissible, is read as excepted from the statutory and contractual notice requirements and controls. Both paragraphs 4 and 7 deal with inadmissible goods, and both are subject to the customs law and regulations they implement. The bond can not be interpreted contrary to law and regulations. *See United States v. DeVisser*, 10 F. 642 (S.D.N.Y.1882) (customs bond must be interpreted in reference to applicable statutes and regulations), *cited with approval in Old Republic Insurance Co. v. United States*, 645 F.Supp. 943, 953 (Ct.Int'l Trade 1986). Any purported exception to the plain reading of the bond, and the law, must be clear and unambiguous.

We conclude that paragraph 7 does not establish absolute liability, free of the statute and regulations. Paragraph 7 twice uses the term "after proper notice"; the provisions of 19 CFR § 114.113 plainly apply to the entry bond, and a notice that violates 19 CFR § 114.113 can not be "proper notice". Thus we hold that paragraph 7 does not override and establish liability despite the final liquidation.

## C. Protest

■ The government argues that in order for Sentry to have preserved the right to contest the government's demand for liquidated damages, Sentry was required to file a protest within 90 days after the demand, pay the full amount demanded, and sue for refund. The Court of International Trade agreed, albeit somewhat ambiguously, for the court also decided the substantive questions of liability.

19 U.S.C. § 1514(c)(2) requires that a "protest of a decision, order, or finding described in subsection (a)" shall be filed within 90 days after the date of demand for payment against a surety bond. Subsection (a) lists the following:

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or any modification thereof;

(6) the refusal to pay a claim for drawback; and

(7) the refusal to reliquidate an entry under section 1520(c) of this title.

Sentry argues that a demand for damages for failure to reexport is not a "decision, order, or finding," and thus that damages are not a "charge or exaction of whatever character", § 1514(a)(3). Sentry argues that the charges and exactions comprehended in § 1514(a)(3) are the payments required to be made in implementation of § 1514(a), but do not extend to damages for breach. Support arises in the fact that "liquidated duties, charges, or exactions", but not "liquidated damages", are named in 28 U.S.C. § 2637(a) as required to be paid before contesting the denial of a protest.

In the case at bar the demand for damages was made four years after final liquidation. The government argues that Sentry is barred from contesting the demand before the Court of International Trade or

on this appeal, having failed to file a protest and pay the full amount demanded in advance. Mindful of the basic principle that forfeitures are not favored, *Knickerbocker Life Ins. Co. v. Norton*, 96 U.S. (6 Otto) 234, 242, 24 L.Ed. 689 (1877), the government's view that would bar the surety from any defense would require clearer statutory support than we discern in 19 U.S.C. § 1514 and 28 U.S.C. § 2637. These provisions relate to the exhaustion of administrative remedies with respect to liquidation of the entry, as a prerequisite to judicial review of any of the items subsumed in liquidation. *See* 1 P. Feller, *U.S. Customs and International Trade Guide* § 4.03[1] (1981) (footnote omitted): "Once the administrative decision represented by a liquidation is made, the importer must file such a protest in order to secure further administrative review, as well as to preserve his right to judicial review". However, the issue at bar does not relate to administrative review of liquidation, brought by the importer or surety, for the time for such review is long past.

We observe first that the Customs Form 5955 that was issued to Utex in 1980, entitled "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment", does not mention an obligation to file a protest, although it does advise that the offender has 60 days in which to file a petition for mitigation under 19 U.S.C. § 1618. Failing payment, according to the form, the matter will be referred to the United States Attorney for collection. (The record does not show what form, if any, was issued in 1984.) In *W.X. Huber v. United States*, 29 Cust.Ct. 92, 99–101, C.D. 1451 (1952), *rev'd on other grounds*, 41 CCPA 69, C.A.D. 531 (1953), the Customs Court held that when demand for return of merchandise was not timely as required by customs regulations, the importer had the right to elect to pay the liquidated damages under protest and sue in the Customs Court, or wait to be sued in the district court; the court distinguished *United States v. Daniel F. Young, Inc.*, 78 Tres. Dec. 123, T.D. 50745 (1942), which held that suit on a surety bond, upon refusal to redeliver, could be brought only in the district court.

Sentry states, without contravention, that protest and advance payment of liquidated damages were not required of defendants in a district court action for damages, prior to enactment of the Customs Courts Act of 1980, which transferred jurisdiction of actions on a surety bond from the district courts to the Court of International Trade, 28 U.S.C. § 1582. There is no suggestion in the legislative history that Congress intended to change the status of the surety in such suits. Indeed, Sentry points out that the Customs Courts Act of 1980 contained a new provision, 28 U.S.C. § 1583, that authorized sureties to implead third parties or file cross-claims in actions on a bond brought under 28 U.S.C. § 1582, an opportunity that is not readily harmonized with the government's position that the surety must pay all claimed damages in full before raising any defense.

■ It is not characteristic of either the law of surety or the law of contracts that a defendant must routinely pay the amount demanded prior to judicial determination of contractual liability. Absent statutory directive or clear Congressional intent to the contrary, we do not impose it. The cases cited by the government referring to finality of assessment absent a timely protest all refer to duties and related exactions subsumed in final liquidation. We entirely agree, see Part A *supra*, that both sides to this action are now barred from challenging the liquidation. But in a suit for damages brought by the government, it appears clear that historically the surety was not required to file a protest and pay the full demanded damages in advance, in order to preserve its right to defend on the issue of liability.

We conclude that the 1980 legislative enactments did not change the right of the surety to defend against a claim for liquidated damages. Under the circumstances that here prevail the surety was not required to file an administrative protest and pay the damages assessed, as prerequisites to defending against the charge.

REVERSED.