The **NATIONAL BONDED WAREHOUSE, ASS'N, INC., et al., Plaintiffs,**

v.

The **UNITED STATES, et al., Defendants.**

**Court No. 87–02–00270.**

United States Court of International Trade.

Jan. 27, 1989.

Sandler & Travis (Thomas G. Travis, Miami, Fla., and Ronald W. Gerdes, Washington, D.C., Edward M. Joffe and Joanne Sargent, Miami, Fla., of counsel), for plaintiffs.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., U.S. Dept. of Justice, New York City, Al J. Daniel, Jr., for defendants.

## OPINION ON REHEARING

RESTANI, Judge:

Plaintiffs have filed a motion for rehearing pursuant to rule 59(e) of the Rules of the Court of International Trade, asking this court to reconsider its December 23, 1987 decision granting defendant's motion to dismiss for lack of jurisdiction under 28 U.S.C. § 1581 (1982 & Supp. IV 1986). This court granted plaintiff's motion and following rehearing reverses its earlier decision for reasons discussed herein.

## DISCUSSION

In its opinion of December 23, 1987, this court originally held that the term "all charges or exactions," as set forth in 19 U.S.C. § 1514(a)(3) (1982 and Supp. IV 1986),[1] encompassed assessments of annual bonded warehouse fees, thus, challenge to the fees could only be heard in this court pursuant to 28 U.S.C. § 1581(a) (review of protest denial). *National Bonded Warehouse Ass'n. v. United States,* 11 CIT ——, 676 F.Supp. 1229, 1232 (1987) (National Bonded I). The court finds on rehearing that it improperly decided that jurisdiction does not exist here under 28 U.S.C. § 1581(i), in light of the facts of the case, the overall purpose and nature of annual bonded warehouse fees, and the recent decision by the Court of Appeals for the Federal Circuit in *United States v. Utex Int'l, Inc.,* 857 F.2d 1408 (1988).

In *National Bonded I,* this court decided that annual warehouse fees came within the purview of 19 U.S.C. § 1514 and its protest requirement because such fees were connected with the supervision by Customs' officials of receipt of merchandise into, and withdrawal of imported merchandise from, bonded warehouses. Although the fees are not paid directly by the importer they clearly "bear ... relation to the importation of merchandise." 676 F.Supp. at 1231 (quoting *Puget Sound Freight Lines v. United States,* 36 CCPA 70, 78, 173 F.2d 578, 584 (1949). The court finds upon rehearing that the tangential connection to the importation process which exists here is insufficient to bring the claim at hand within the strict requirements of 19 U.S.C. § 1514.

Bonded warehouse fees are not assessed on a per entry basis. Rather, the fees are based on a calculation of the actual cost to the government of providing spot check inspection and supervision services to the

---

1. 19 U.S.C. § 1514(a)(3) says in relevant part: ... decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

 (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of protest, in whole or in part, is commenced in the United States Court of International Trade....

bonded warehouse itself. Apparently, the supervision is of both procedures related to import and export activities as well as physical warehouse conditions and security. Furthermore, under the current structure, the warehouse could be assessed annual fees even if it had no entries for a given period.[2] The fees have no direct connection to the importation of any specific merchandise. As this court acknowledged in its previous opinion, both *Puget Sound Freight Lines* and *Atlantic Transport Co. v. United States,* 5 Ct.Cust.App. 373 (1914), though distinguishable from the case at hand, indicated that fees, exactions, or charges which bear no relation to the importation of merchandise and the rate of duty resulting from such classification, do not fall within the meaning of "charges or exactions of whatever character" as used in 19 U.S.C. § 1514(a)(3). Furthermore, no case has been uncovered in which fees, charges or exactions unconnected with the entry of specific merchandise were found to be within § 1514(a)(3).

While the government argues that its interpretation of the less than clear statute is entitled to great weight, the court finds that the government's assertion, that the protest requirement of 19 U.S.C. § 1514 is applicable to the assessment of annual warehouse fees, is merely a post-litigation rationalization. Looking beyond the government litigious assertions, the court finds that the government's actual application of the statute reveals the interpretation to be given affect.

Section 1514(a) states that "decisions" are final and conclusive upon all persons, *including the United States,* unless a protest is filed timely. Protests must be filed within 90 days of either liquidation or the date of the decision being protested.[3]

Responding to written complaints from the bonded warehouse proprietors regarding the increase in annual fees, the defendant wrote:

> The Commissioner of Customs agrees that bonded warehouses with only a few small accounts should pay a smaller annual fee than larger warehouses. Therefore, he has ordered a study to be conducted during 1985 as to what should be the amount of such a reduced fee. If a reduced fee is approved and implemented, the difference between the $1400 fee already paid for 1985 and the reduced fee would be refunded. *See* defendant's exhibit 7 at 159.

Clearly, if the fees were subject to protest upon original assessment they would have been deemed final as to both the government and the plaintiffs if not challenged within 90 days of the date of assessment and the government would not have been able to change the fee structure after issuance of bills, as it clearly envisioned doing during 1985.[4] On April 25, 1985,[5] more than four months after the original 1985 fees were assessed, the government decided to change the fee structure from a flat fee to the tiered structure presently at issue. At this same time the government indicated that further billing and refunds

---

**2.** A Customs Service letter found at Plaintiff's Exhibit M at 225 indicated the fee is payable even if no merchandise is stored during the relevant period.

**3.** In certain circumstances, not relevant here, sureties may protest within 90 days of demand. 19 U.S.C. § 1514(c) (1982 and Supp. VI 1986).

**4.** T.D. 85–36, 19 Cust.Bull. 56, 57 (Jan. 31, 1985) states:

> The annual fee to be charged for 1985 is set at $1,400.00. However, during the early part of 1985 Customs will investigate the establishment of a tiered annual warehouse fee based on the size or volume of the individual warehouse. The tiering system is expected to re-

sult in a fee lower than $1,400 for some small warehouses and a higher fee for very large warehouses. The tiered fees will be announced in another Federal Register notice. *Refunds and billings will be issued by Customs during 1985.* (Emphasis added)

**5.** *See* Plaintiff's Exhibit F at 141. In a memorandum from the Comptroller to the Assistant Commissioners of Commercial Operations and Inspection & Control the Comptroller stated:

> As a result of a meeting with the Commissioner on April 25, 1985, a final decision was made concerning the tiered fee structure for Customs bonded warehouses. The structure ... will consist of three tiers and will necessitate refunds or rebillings for all warehouses this fiscal year.

would be issued for the 1985 period.[6] At that point there was no final decision which was protestable.

Further proof that the government did not consider the assessment of annual fees a protestable event is established by the testimony of the government witness at rehearing. The witness testified that the government neither considered nor treated the complaint letters it received as formal protests. Instead, according to this witness, the complaints were treated as applications for administrative refunds. *See* Transcript of June 21, 1988 at 48. The government also did not inform the parties of their elective right to protest payment of the annual fees. Papers were introduced at rehearing which consistently state that district directors had "no evidence that warehouse proprietors knew or had reason to know of their right to protest the annual fees under section 514 of the Tariff Act." *See* defendant's exhibit 6. Lastly, the protest forms themselves do not cover annual warehouse fees. The forms specify that entry specific information must be provided at the time protest is filed. Details such as the entry number, check digit, date of entry, and date of liquidation are required to be provided by the protestant. Clearly none of these details are applicable to the protest of annual warehouse fees.

Further reason exists for this court to reverse its earlier decision regarding jurisdiction. The opinion of the Court of Appeals for the Federal Circuit in *United States v. Utex Int'l., Inc., supra*, provides a clearer explanation than existed previously of the meaning of "charges or exactions" as used in both 19 U.S.C. § 1514 and 28 U.S.C. § 2637(a) (1982).

In *Utex* the Federal Circuit addressed the issue of whether a demand for damages for failure to export was a "charge or exaction of whatever character," as defined in § 1514(a)(3), and thus subject to the protest requirement. The court held that it was not, finding support for its decision in the fact that "liquidated duties, charges, or exactions," but not "liquidated damages,"

are listed in 28 U.S.C. § 2637(a) as requiring payment as a prerequisite to suit based on denial of a protest. The court characterized the issue of liquidated damages as being unrelated to the administrative review process concerning liquidation and hence outside the statutory framework of § 1514(a). The court found that the substantive issue being litigated should be resolved by resort to either the law of surety or the law of contracts, neither of which, according to the court, characteristically required that a defendant "routinely pay the amount demanded prior to judicial determination of contractual liability." *Utex* at 1414. As a result the court held that its jurisdiction was not barred by Utex's failure to lodge protest and pay the fees assessed by the administrative agency. The court stated that the term "liquidation" as used in the statute applied only to "liquidation of entries," not "liquidation" in a generic sense.

Although the present case does not fall squarely within the Federal Circuit's decision in *Utex*, this court nevertheless finds the court's treatment of the term "all charges or exactions of whatever kind" instructive as to the present case. Like the issue of liquidated damages for failure to re-export, the issue of annual warehouse fees is connected, only tangentially, with the importation of goods and the liquidation of entries. The payment of annual fees is not directly connected or "directly proportional to the number of open warehouse entries during any part of a warehouse's business year." *See* defendant's exhibit 7 at 164–165. This court concludes, therefore, that the tangential relation to the entry process which is present here is insufficient to bring the issue of the proper assessment of annual warehouse fees within the purview of § 1514(a).

In light of the foregoing discussion, the court finds that jurisdiction exists under 28 U.S.C. § 1581(i)(4) (1982), which grants the court exclusive jurisdiction of any civil action arising out of any law providing for ... "administration and enforcement" of

---

6. Although refunds were never effectuated for 1985, failure to do so was not shown to be related to any decision that the fees were subject to protest provisions.

import matters. *See Di Jub Leasing Corp. v. United States*, 1 CIT 42, 505 F.Supp. 1113 (1980) (granting jurisdiction under 28 U.S.C. § 1581(i)(1) and (4) because revocation of a cartman's license pursuant to the customs regulations is intertwined with and directly related to the administration and enforcement of the laws providing for revenue from imports). Accordingly, defendant's motion to dismiss is denied.