**Slip Op. 99-90**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                              :
The United States,                            :
                                              :
      Plaintiff,                           :
                                              :
      v.                                   :   Court No. 97-05-00922
                                              :
So's USA Company, Inc.,                       :
                                              :
      and                                  :
                                              :
Washington International Insurance            :
Company,                                      :
                                              :
      Defendants.                          :
_____       :

[Defendants' motion for summary judgment granted, plaintiff's motion for summary judgment denied.]

Dated: August 26, 1999

David W. Ogden, Acting Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert), A. Ted Kundrat, Office of Assistant Chief Counsel, United States Customs Service, of counsel, for plaintiff.

Sandler, Travis & Rosenberg and Glad & Ferguson, P.C.(T. Randolph Ferguson), and John M. Daley, of counsel, for defendants.

## OPINION

**RESTANI, Judge:** This matter is before the court on cross-motions for summary judgment. When deciding cross-motions for summary judgment, the court considers each motion separately, and on each views the facts in the light most favorable to the non-

moving party.  See Heublein, Inc. v. United States, 996 F.2d
1455, 1461 (2d Cir. 1993).  The United States commenced this suit
to demand payment of liquidated damages on a bonded Customs
obligation.  The court has jurisdiction pursuant to 28 U.S.C. §
1582(2) (1994).

### Background

So's USA Company, Inc. ("importer") is an importer of a
Taiwanese product labeled Pearl Face Cream.  The importer entered
the face cream through the port of Los Angeles, California on
November 30, 1990.  Gov't Statement of Facts, ¶ 6 at 2.  The
facts of this case are not entirely clear because Customs has
misplaced the original entry file that contains the documents
concerning the entry of Pearl Face Cream into the United States
by So's.  For the purposes of summary judgment, however, the
material facts are discernible.

So's entered into a single entry bond, Customs Form 301,[1]
with Washington International Insurance Company (the "surety").
Customs Bond, Compl., Tab 1, at 1.  The bond was delivered to
United States Customs Service ("Customs") on November 16, 1990.
Gov't Statement of Facts, ¶ 1 at 1.  The entry bond insures that
the surety will deliver the amount due if the importer defaults

---

[1]    The single entry bond for Entry No. 409-0513137-7 was
prepared in the amount of $53,000.00.  Customs Bond, Compl., Tab
1, at 1.

on its obligations.  Customs Bond CF 301 entered into by So's and Washington incorporated the obligations enumerated in 19 C.F.R. § 113.62 (1999).[2]  Customs Bond, Compl., Tab 1, at 1.

A second form involved in this entry process is an Entry/ Immediate Delivery Form, CF 3461.  There are six identified CF 3461s in this case which are marked with a varying combination of stamps.  Copies of So's CF 3461 were included in three different files[3] during the entry process: (1) the Customs entry file, (2) the Food & Drug Administration ("FDA") entry file, and (3) the Fines, Penalties & Forfeiture file ("FP&F).[4]

Because of the missing Customs file, it is unclear from the record which stamped CF 3461 the Government sent to defendants. The Government alleges that on November 21, 1990, an FDA employee

---

[2]     Sections (a)(1),(b),(j),(k),(l) of 19 C.F.R. § 113.62 have been altered or added since 1990; however, the relevant sections of this regulation for purposes of this case have not changed since 1990.

[3]     A fourth file, kept by So's customhouse broker was destroyed, following protocol, after five years from the date of entry.  Defs.' Mot. for Summ. J. at 17.

[4]     An FP&F file is opened by Customs when an alleged import violation has taken place. Victoria Jefferson, FP&F Paralegal Specialist, was deposed and testified that there would be no way of knowing which documents in the FP&F came from the original Customs entry file.  Jefferson Dep. (Dec. 17, 1998), at 22, Defs.' App., Ex. U, at 7.

sent a CF 3461 with a stamped "Hold at CES[5] for FDA Examination" to Darrell, the importer's customhouse broker.[6]  See Entry/ Immediate Delivery Form, Compl., Tab 2, at 1.  An apparent copy of this CF 3461 is located in the FP&F file.  This CF 3461 has both the rectangular "Hold at CES" stamp and a triangular stamp, which reads: "FDA May Proceed: No FDA Sample is Desired from this Entry."

The Los Angeles District Public Bulletin 86-106 ("Bulletin") contains a list of the stamps used at the time of So's entry in the Los Angeles port.  See Los Angeles Public Bulletin 86-106 (Oct. 3, 1986), at 10-13, Defs.' App., Ex. B, Tab B10, at 13. The rectangular "Hold at CES" stamp is not described in this Bulletin.  The triangular stamp is listed in the Bulletin, as one of the stamps used when the package is acceptable to FDA.[7]  See

---

[5]     CES is a Centralized Examination Station.  A CES is a privately operated facility where imported merchandise is made available to Customs officers for physical examination.  See T.D. 93-6, 27 Cust. Bull. 19, 20 (1993).

[6]     Defendants accept this factual statement for purposes of summary judgment.

[7]     Lloyd Lehrer, an FDA compliance officer, indicated that the triangular stamp may have been crossed off.  He based this conclusion on a "scribble" which appears across the stamp. Lehrer Dep. (Dec. 16, 1998), at 98, Defs.' App., Ex. C, at 7. This "scribble" is difficult to discern.  It could well be another notation, such as a signature.

Los Angeles Public Bulletin 86-106, at 10-3, Defs.' App., Ex. B, Tab B10, at 3.

The FDA entry file in this case contains three copies of the CF 3461, none of which have the same combination of stamps as those on the CF 3461 the Government claims was sent to So's.[8] Each form is dated November 15, 1990, and the stamps on these CF 3461s are dated November 21, 1990.  The first form in this file has "cargo control" handwritten on the right side and also has the "Hold at CES" stamp.[9]  Entry/Immediate Delivery Form, at 37-4, Defs.' App., Ex. C, Tab C37, at 4.  The second form merely has a "scribbled" triangular "May Proceed" stamp.  Entry/Immediate Delivery Form, at 37-5, Defs.' App., Ex. C, Tab C37, at 5.  The third form does not have any stamps or other relevant markings.

---

[8]     The Los Angeles Public Bulletin states that the FDA package, prepared by the importer's customhouse broker, should contain two photocopies of the CF 3461. See Los Angeles Public Bulletin 86-106, at 10-2,  Defs.' App., Ex. B, Tab B10, at 2. The customshouse brokers, however, often submit multiple copies of this form.  Lehrer Dep., at 33, Gov't Mot. for Summ. J., Tab 1, at 29.

[9]     "Cargo control is a mechanism which requires a particular importer or a particular commodity which has an identified history of problem, or [FDA has] some other reason to secure the cargo, whereby [FDA notifies] Customs, via the rubber stamps [placed] on the 3461, that the cargo is not to be released from [FDA] custody or from...[Customs'] custody until [there is some further notice].  Lehrer Dep., at 92-93, Defs.' App., Ex. C, at 5-6.

Entry/Immediate Delivery Form, at 37-6, Defs.' App., Ex. C, Tab C37, at 6.

The FP&F file contains three copies of the CF 3461.[10]  These three documents do not contain any combination of the stamps which are on the CF 3461s located in the FDA file.  One copy does not have any stamps, but has a handwritten notation, "Price 11-27-90," and is signed and dated November 30, 1990 by U.S. Customs Inspector, Pilar Murphy.  See Entry/ Immediate Delivery Form, Defs.' App., Ex. B, Tab B14.  The Customs inspector conceded that this signed form indicates that the cargo passed Customs' examination and that Customs released it.  Murphy Dep. (Dec. 17, 1998), at 60-62, Gov't Mot. for Summ. J., Tab 1, at 6-8.  Another form, signed and dated November 30, 1990, is marked with a stamp indicating that Customs released the face cream for a Mobile Entry Team Exam.[11]/[12]  See Entry/Immediate Delivery Form, Defs.'

---

[10]     A review of the deposition testimony led the court to conclude that these three CF 3461s are from the FP&F file.  The court also notes that these three CF 3461s are a part of Exhibit 39 to the Lehrer deposition, which the defendants state is a copy of the FP&F file, although they express reservations over whether this is an accurate and complete copy of the FP&F file.  See Defendants' letter to CIT (June 28, 1999), at 2-3.

[11]     This stamped document allegedly was sent to So's through its customhouse broker.  Defs.' Mot. for Summ. J. at 5.

[12]     A Mobile Entry Team Exam ("MET") stamp indicates that a MET exam was performed on the product.  A MET Exam is a total "devanning" of the container in which "everything is put on the
(continued...)

App., Ex. B, Tab B8.  The third form is marked with both the rectangular "Hold at CES" stamp and the triangular "May proceed" stamp.  See Entry/Immediate Delivery Form, Defs.' App., Ex. B, Tab B9.  This is the same form, or a copy of the same form, which the Government represents was sent to So's.

It is undisputed that So's filed for entry/ immediate delivery on November 20, 1990.  See Gov't. Statement of Facts, ¶ 4 at 2.  It appears from the CF 3461 with the "MET Exam" stamp that on November 27, 1990, the goods were released from Customs for delivery to the Price Transfer CES.  Defs.' Statement of Facts, No. 7 at 3; Entry/Immediate Delivery Form, Defs.' App., Ex. B, Tab B8.  Both parties agree that the merchandise was examined by Customs between November 15 and November 30, 1990, during the time it was held at the CES.  Gov't Mot. for Summ. J. at 7; Defs.' Mot. for Summ. J. at 6.  The parties contest, however, whether the FDA conducted its examination of the Pearl Cream at that time.[13]  Customs and the FDA examine imported

---

[12](...continued)
floor for [Customs'] access . . . . [B]oxes [are] randomly opened, merchandise [is] looked at, examined, verified . . . ." Reed Dep. (Aug. 27, 1998), at 92-93, Defs.' App., Ex. B, at 11-12.

[13]    Defendants argue that an FDA officer might have examined the goods at the Price Transfer CES and noted remarks on the missing Customs entry file.  Defs.' Statement of Facts, No. 9, n.2.  The Government argues that defendants should have known
(continued...)

merchandise for different objectives.  The FDA examines the merchandise for public health and safety purposes, pursuant to 21 U.S.C. § 381(a) (1994), and Customs examines the merchandise for tariff law purposes, see 19 C.F.R. § 151.1 (1999).  Customs, however, is responsible for carrying out FDA decisions, "in accordance with customs law and regulation."  United States v. Utex Int'l Inc., 857 F.2d 1408, 1411 (Fed. Cir. 1988).  Customs may release the goods without physical examination, 19 C.F.R. § 151.2(a)(2) (1999), and Customs may later request samples or additional examination of goods which have already been released, 19 C.F.R. § 151.11 (1999).

On November 30, 1990, Customs released the imported goods to So's custody.  Gov't Statement of Facts, ¶ 7 at 2.  So's filed entry number 409-0513137-7 with Customs to enter the face cream through the Port of Los Angeles.  Id., ¶ 6 at 2.  So's states that it inferred from this filing that the goods had been examined for all purposes and were admissible.  See Defs.' Mot. for Summ. J. at 7.  So's sold the merchandise in December of

---

[13](...continued)
that the FDA had not examined the goods because the required FDA stamped copies were not delivered to the customshouse broker. Gov't Resp. to Defs.' Statement of Facts, ¶ 9, at 6-7.  As noted, the customshouse broker's file was destroyed in ordinary course. The court need not resolve this issue.

1990.  Defs.' Statement of Facts, No. 11 at 5.  The parties have not advised that liquidation has occurred.[14]

On January 16, 1991, the FDA sent a letter to So's customhouse broker, Darrell, informing defendants that the goods needed further examination.  Letter from FDA to Darrell, Compl., Tab 4, at 1.  Neither So's nor Darrell responded to this letter.  On March 15, 1991, the FDA asked Customs to issue a letter to So's for redelivery of the Pearl Face Cream to Customs' custody.  Letter from FDA to Customs, Compl., Tab 5, at 1.  Pursuant to this request, Customs issued a "Notice of Redelivery," Customs Form 4647, to So's on May 20, 1991.  See Gov't Statement of Facts, ¶ 10 at 3.  This notice informed So's that the merchandise had to be redelivered to Customs' custody within thirty days.  Notice of Redelivery, Compl., Tab 6, at 1.[15]  So's claimed it was unable to redeliver the goods because it had already sold the

_____

[14]     The court presumes that when redelivery is ordered before liquidation, liquidation ordinarily does not occur, because liquidation is intended to resolve all issues within Customs' jurisdiction, including admissibility.  See Utex, 857 F.2d at 1409 ("when goods are finally liquidated they are deemed admissible.").

[15]     The relevant language on the redelivery notice provides, "Deliver to Customs all merchandise which has been released to you under the terms of the entry bond . . . .  Articles not returned within 30 days of this notice become liable for liquidated damages."  It further states, "To avoid liquidated damages, this merchandise must be destroyed or exported to the sender."  Notice of Redelivery, Compl., Tab 6, at 1.

merchandise.  So's failure to redeliver prompted Customs to issue a demand for liquidated damages on July 8, 1991.  Notice of Penalty or Liquidated Damages, Compl., Tab 7, at 1.  When So's refused to pay liquidated damages, the Government requested payment from the surety, Washington International.  See Gov't Statement of Facts, ¶ 14 at 3-4.  Both So's and Washington continued to refuse to pay liquidated damages after Customs issued a final demand letter on April 22, 1996.  Letter from Customs to Defs.' Attorney, Compl., Tab 9, at 1.  The Government filed its complaint on May 30, 1997.

Defendants claim that the applicable statute of limitations, 28 U.S.C. § 2415(a) (1994), bars this action because the Government filed its complaint for liquidated contract damages more than six years after November 1990, when the merchandise was released.  The Government contends the bond was breached in June 1991 when redelivery was not made thirty days after the end of a conditional release period.  Thus, it argues the suit is timely.

**Discussion**

Section 2415(a) of Title 28 provides that "every action for money damages brought by the United States . . . which is founded upon any contract . . . shall be barred unless the complaint is filed within six years after the right of action accrues . . . ." The Government's right of action on the contract accrues when the

terms of the Customs bond are breached.  See United States v. Cocoa Berkau, Inc., 990 F.2d 610, 613 (Fed. Cir. 1993).  In order to determine whether the statute of limitations has run, the court must determine whether the goods were conditionally released and whether this release created an extended period for issuance of the redelivery notice, so that the contract would be breached by failure to redeliver.  Customs regulation 19 C.F.R. § 113.62(d) provides:

> If merchandise is released conditionally from Customs custody to the principal before all required evidence is produced . . . or before its right of admission into the United States is determined, the principal agrees to redeliver timely, on demand by Customs, the merchandise released if it:
>
>> (1) Fails to comply with the laws or regulations governing admission into the United States;
>> (2) Must be examined, inspected, or appraised as required by 19 U.S.C. 1499:
>
> . . .
>
> It is understood that any demand for redelivery will be made no later than 30 days after the date that the merchandise was released or 30 days after the end of the conditional release period (whichever is later).

The Government asserts two reasons supporting its argument that So's first breached the bond on June 19, 1991, when it failed to redeliver the goods within the thirty day time limit specified by the notice to redeliver.  In its first argument, the Government contends that Customs released the goods conditionally

in November 1990, when the goods were released prior to liquidation.  The Government cites 19 C.F.R. § 141.0a(i) (1999) which states, "'released conditionally' means any release from Customs custody before liquidation."[16]  In its motion for summary judgment, the Government raises its second argument that the FDA requested a sample of the face cream,[17] and that because of this request, So's had a legal obligation to hold the goods pursuant to 21 C.F.R. § 1.90 (1999).  See Gov't Mot. for Summ. J. at 2, 7-8, 11.  Thus, when So's sold the goods, this constituted a breach of the Customs bond.  In its memorandum in opposition to defendants' motion for summary judgment, however, the Government admits that a violation of 21 C.F.R. § 1.90, which is an FDA regulation not incorporated into the bond, does not give rise to liability under a Customs bond.  Gov't Memo. in Opp'n to Summ. J. at 3.  Nevertheless, the Government insists that "FDA's decision to sample the Pearl Cream in conjunction with its non-issuance of a 'may proceed notice' prior to release by Customs established a 'conditional release period' as described at 19 C.F.R. §

---

[16]     This definition of "released conditionally" has not changed since 1990.

[17]     The Government does not explicitly state that the "Hold at CES" stamp is a request for a sample, although it does so state in its statement of facts.  See Gov't Statement of Facts, ¶ 5 at 2 ("FDA stamped and sent a notice of sampling to So's on [CF 3461] . . . which read: 'Hold at CES for FDA Examination.'").

113.62(d)."  Gov't Mot. for Summ. J. at 11.

The Government's argument that "any release before liquidation is conditional," for purposes of 19 C.F.R. § 113.62(d), is contrary to Customs' own analysis.  In a 1986 ruling Customs stated that, "'end of the conditional release period' in 19 C.F.R. 113.62(d) refers to time limits [established by regulation] and does not refer to the liquidation of the entry."  C.S.D. 86-21, 20 Cust. Bull. 631, 644 (1986).  The ruling further states, "[t]he language in 19 C.F.R. 141.0a(i) does not purport to affect the meaning of the bond language which is set forth in another Part of the Customs Regulations."  Id. at 642.  As explained in the ruling, if the language in 19 C.F.R. § 141.0a(i) controlled the language in the Customs bond, then the phrase "end of the conditional release period" in 19 C.F.R. § 113.62(d) would only refer to the liquidation of the entry.  According to the ruling, this interpretation leads to a conflict with the bond language which states "whichever is later," and makes the entire first clause meaningless for Customs' purposes, because a period that ended thirty days after liquidation would always be subsequent to a period that ended thirty days after release.  See id.  Thus the ruling states that the definition of released conditionally in 19 C.F.R. § 141.0a(i), "merely states a general truism; that is, liquidation . . . closes all issues on

that entry . . . for the Government and the importer." Id.[18] The

ruling goes on to note that as liquidation resolves all issues

between the parties including admissibility, no redelivery notice

may be issued after liquidation.  Thus, thirty days after the end

of the conditional release period cannot mean thirty days after

liquidation.  Accord Cust. HQ Rul. 088880, 1992 U.S. Cust. HQ

Lexis 1682, at *7 (Mar. 19, 1992) (citing Utex, 857 F.2d 1408).

Later rulings, while adhering to the holding of the 1986

ruling, make clear that a finite conditional release period does

not have to be established expressly by regulation, but may also

be established by other notice not inconsistent with the

regulatory scheme.  Cust. HQ Rul. 222826, 1991 U.S. Cust. HQ

Lexis 1386, at *1 (Mar. 7, 1991); C.S.D. 90-99, 24 Cust. Bull.

574, 577 (1990) (finding that a request for a sample for marking

purposes commences a conditional release period; period ends when

Customs receives the sample).  The Government argues that the

absence of a "may proceed notice" by the FDA is sufficient notice

to establish a conditional release period.  See Gov't Reply on

its Mot. for Summ. J. at 4.

---

[18]    The court need not decide whether this entire analysis
is correct.  Customs took the position prior to the time of the
release at issue that for purposes of the bond the "end of the
conditional release period" was not synonymous with liquidation.
Thus, defendants could not have had notice of the opposite.

The court finds that regardless of which CF 3461 So's received from either FDA or Customs, the face cream was not conditionally released on November 30, 1990 for three reasons. First, as indicated, at the relevant time there was no finite regulatory conditional release period established.

Second, So's received no other notice that a conditional release had begun. As apparently recognized by Customs, notice, regulatory or otherwise, is essential to the establishment of a conditional release period. The importer must be made aware of its obligations in the case of a conditional release period. It makes no commercial or equitable sense to leave an importer in the dark as to the status of its goods. In the absence of some type of notice an importer may presume it is free to dispose of the goods thirty days after release. See 19 C.F.R. § 113.62(d).

Third, there was no request for a sample, which the government argues also may commence a conditional release period. See C.S.D. 90-99, 24 Cust. Bull. at 577. The "Hold at CES for FDA Examination" stamp was not a request for a sample. The Bulletin for the Los Angeles port indicates that an octagonal stamp bearing the words: "FDA Notice of Sampling, Do Not Release" or a rectangular stamp bearing the words: "This Shipment Must Be Held Intact FDA Notice of Sampling" are used to request a sample. See Los Angeles Public Bulletin 86-106, at 10-13, Defs.' App.,

Ex. B, Tab B10, at 13.  Moreover, a request for a sample would
have been accompanied by another FDA form, the Land Port Entry
form (FD 720).  Id. at 10-3.  In many Customs cases a CF 28,
Request for Information, or other appropriate form indicates that
a conditional release period has begun.  See C.S.D. 90-99, 24
Cust. Bull. at 577.

In this case, there is no evidence that a form indicating a
notice of sampling was given to defendants or that a sample or
laboratory inspection was to take place.[19]  Although the FDA
Compliance Officer, Lloyd Lehrer, states that a rectangular stamp
was used because the employee believed the firm was suspect, see
Lehrer Dep., at 99, Defs.' App., Ex. C, at 7, there is no
evidence from which the court could conclude that this stamp

---

[19]    FDA's January 1991 letter to Darrell states that it
issued an FD 720 to So's.  Letter from FDA to Darrell, Compl.,
Tab 4, at 1.  No form is attached to the letter in the file.  A
poor copy of an FDA 713a, which appears to be a form accompanying
a request for a sample, and which is unattached to any
correspondence to So's or any request for a sample, is located in
the FDA file.  See FDA 713a, at 37-11, Defs.' App., Ex. C, Tab
C37, at 11.  The Government stated in its response to defendants'
request for admissions that this form is proof that the FDA
issued an FD 720.  Gov't Resp. to Req. for Admis., ¶ 10, Defs.'
App., Ex. R, at 4.  Neither party, however, drew the court's
attention to this form in the motions for summary judgment.  The
court cannot conclude that this isolated form demonstrates timely
and sufficient notice of the FDA's intent to sample the face
cream, particularly in the light of the fact that the FDA stamp
on the CF 3461 was not one of the stamps used to request a
sample.  See Los Angeles Public Bulletin 86-106, at 10-13, Defs.'
App., Ex. B, Tab B10, at 13.

communicated to So's that a sample was requested or that a conditional release period had been established.

If Customs' view that the absence of a "may proceed" notice establishes a conditional release period has any viability, it does not affect this case.  Customs rulings issued six year after the entry at issue state that failure to issue a "may proceed notice" establishes a conditional release period.  See  Cust. HQ Rul. 225807, 1995 U.S. Cust. HQ Lexis 1031, at *6 (Dec. 4, 1995); Cust. HQ Rul. HQ 225825, 1996 U.S. Cust. HQ 1084, at *3 (Mar. 19, 1996).  In November 1990, however, So's was not on notice that the absence of a "may proceed" notice could establish a conditional release period.[20]  Cf. C.S.D. 90-99, 24 Cust. Bull. at 577 (1990) (finding that a request for a sample establishes a conditional release period; no mention that the absence of "may proceed" notice without a request for a sample establishes a conditional release period).  The Government's reliance on the statement in the Los Angeles Bulletin that all FDA regulated merchandise must be held until the FDA issues a "May Proceed" or "Release Notice" is insufficient, because the Bulletin does not

---

[20]     Moreover, the CF 3461 with both a "may proceed" stamp and a rectangular "hold" stamp sent conflicting notice to the importer.  Although the depositions indicate that the triangular stamp was scribbled on, if the importer is provided a photocopy, this scribble would not be totally evident.  As indicated, even if visible, the meaning of the scribble is unclear.

notify an importer that the absence of such clearance establishes a conditional release period.  See Los Angeles Public Bulletin 86-106, at 10-1, Defs.' App., Ex. B, Tab B10, at 1.  Furthermore, the 1995 and 1996 rulings involve a request for a sample as well as the absence of a "may proceed" notice.  It would appear that some clear indication that the release is conditional and notice of what event would end the conditional release period are required.

The Government claims a breach, based on failure to redeliver following the conditional release period, occurred in June 1991.  A suit based on any breach that may or may not have occurred prior to June 1991 would be barred by the statute of limitations.  The court need not, therefore, determine whether So's is correct that any breach that occurred was in November of 1990.[21]  In the absence of a validly noticed conditional release period, Customs had thirty days from the date of release to issue

---

[21]    Because the court is not deciding whether a breach occurred in November 1990, many of the outstanding contested facts are immaterial. In particular, the court does not decide whether the defendant received notice of the hold on its merchandise through Darrell; whether Darrell received the CF 3461 with the "Hold at CES" stamp; whether defendants breached 21 C.F.R. § 1.90 in the absence of a request for a sample; or whether the Price Transfer CES was a place in the charge of a customs officer.

a notice of redelivery.  See 19 C.F.R. 113.62 (d).[22]  It is

uncontested that Customs failed to issue such notice within

thirty days of November 30, 1990, the date of release.  Thus, the

Government's theory fails.

The Government cannot unilaterally postpone the accrual of

the cause of action.  See Cocoa Berkau, 990 F.2d at 614 ("The

accrual of a right of action should occur upon default by a

liable party, not when a creditor takes steps to procure

performance.").  If the Government could create a conditional

release period of indeterminate duration, it could ask for

redelivery at any time and unilaterally postpone the accrual date

for purposes of the statute of limitations to a date of its

choosing.[23]  In addition to the obvious commercial disruption such

a scheme would cause, case law does not permit this.  See United

States v. Commodities Export Co., 972 F.2d 1266, 1271 (Fed. Cir.

1992) (finding that the court cannot "permit a single party to

postpone unilaterally and indefinitely the running of the statute

of limitations.").

_____

[22]    Customs' own rulings state that it must issue notice to
redeliver promptly.  See Cust. HQ Rul. 088880, 1992 U.S. Cust. HQ
Lexis 1682, at *7 (Mar. 19, 1992) (granting protest against
notice of redelivery issued more than thirty days after date
merchandise was released).

[23]    This is particularly problematic for cases such as this
one where documents are destroyed in the ordinary course of
record disposal, or are simply lost due to the passage of time.

## Conclusion

Summary judgment is granted in favor of defendants.  The cross-motion for summary judgment by the Government is denied. The Government's request for post and pre-judgment interest is therefore also denied.

_____
Jane A. Restani
Judge

Dated: New York, New York

This 26th day of August 1999.