879 F.2d 815
 11 ITRD 1289
 UNITED STATES of America, Plaintiff/Appellant,
v.
TOSHOKU AMERICA, INC. and Federal Insurance Co.,
Defendants/Cross-Appellants.
TOSHOKU AMERICA, INC., Third-party/Plaintiff,
v.
CATZ INTERNATIONAL, INC., Third-party/Defendant and
Fourth-party/Plaintiff,
v.
SOUTHERN COMMODITIES, INC., Fourth-party/Defendant.
 Nos. 88-1221, 88-1222.
 United States Court of Appeals,
Federal Circuit.
 June 30, 1989.
Rehearing Denied Sept. 1, 1989.
 
 Kenneth N. Wolf, Commercial Litigation Branch, Dept. of Justice, of New York City, argued for plaintiff/appellant. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Attorney in Charge, International Trade Field Office.
 Peter J. Fitch, Fitch, King & Caffentzis, of New York City, argued for defendants/cross-appellants.
 Before NEWMAN, Circuit Judge, COWEN, Senior Circuit Judge, and ARCHER, Circuit Judge.
 ARCHER, Circuit Judge.
 
 
 1
 The United States (government or Customs), Toshoku America Inc. (Toshoku) and Federal Insurance Company (FIC) appeal from the decision of the United States Court of International Trade, 670 F.Supp. 1006 (CIT 1987), granting summary judgment in favor of the government, but limiting its damages, and denying summary judgment in favor of Toshoku and FIC. We reverse.[1]
 
 BACKGROUND
 
 2
 In October of 1978, Toshoku imported 1300 cartons of tuna into the United States for general consumption. The tuna was conditionally released to Toshoku pending an admissibility determination by the Food and Drug Administration (FDA). The conditional entry was covered by a General Term Bond For Entry Of Merchandise, Customs Form 7595, executed by Toshoku as principal and FIC as surety. Upon finding that a sample of the tuna appeared to be decomposed, the FDA issued a Notice of Detention and Hearing and later, on December 12, 1978, a Notice of Refusal of Admission. The December notice was signed on behalf of the District Director of Customs and directed Toshoku to export the tuna within ninety days of the date of the Notice or risk its destruction.[2] Notwithstanding the inadmissibility of the tuna, Customs liquidated its entry on December 29, 1978. The goods were not reliquidated.[3]
 
 
 3
 On March 16, 1979, Customs notified Toshoku that unless it provided evidence that the tuna had been exported or destroyed it would be liable for liquidated damages under the redelivery provision, i.e., paragraph 4, of the entry bond.[4] When Toshoku did not respond, Customs issued a Notice of Penalty or Liquidated Damages Incurred And Demand For Payment, Customs Form 5955-A, to Toshoku on May 7, 1979. This notice demanded that Toshoku pay to Customs $32,474.16 in liquidated damages for its failure to return the tuna to Customs' custody.[5]
 
 
 4
 Toshoku notified Customs that the Demand for Payment was premature because the required Notice to Redeliver had not been issued. See 19 C.F.R. Sec. 141.113(g) (1978).[6] Thereafter on March 19, 1981, Customs cancelled its original damage claim[7] but asserted a new and separate damage claim for the same amount. The basis of the new claim was that Toshoku had failed to export the tuna as directed in the December 12, 1978 notice and "as required under section 7 of your entry bond."[8] The new claim was accompanied by another Customs Form 5955-A demanding payment, and a copy was forwarded to FIC. After both Toshoku and FIC failed to pay, the government filed suit in the Court of International Trade under 28 U.S.C. Sec. 1582(2) (1982) for recovery on the bond.
 
 
 5
 In the proceeding before the trial court, the parties each moved for summary judgment. The government argued that Toshoku had breached paragraph 7 of its entry bond by failing to export the adulterated tuna as directed in the December 12, 1978 notice. While conceding that the tuna was neither exported nor destroyed, Toshoku and FIC argued that paragraph 4 of the entry bond had not been complied with because Customs never demanded redelivery and thus cannot enforce a claim for failure to export under that paragraph. They also contended that paragraph 7 of the entry bond was inapplicable unless Toshoku sought and failed to bring the shipment into compliance, a scenario the government admitted did not occur. Lastly, Toshoku and FIC argued that in any event proper notice, as contemplated by paragraph 7 of the bond, was not provided.
 
 
 6
 The Court of International Trade granted summary judgment in favor of the government, but limited the awarded damages to the value of the merchandise, $30,636.00, because the "entry has been liquidated and the duty has been tendered." Both sides appeal.[9]
 
 DISCUSSION
 
 7
 A. Summary judgment is appropriate when there is no genuine issue regarding any material fact and when the movant is entitled to judgment as a matter of law. Rule 56(d) of the Rules of the United States Court of International Trade; Hi-Life Prods., Inc. v. American Nat'l Water-Mattress Corp., 842 F.2d 323, 325 (Fed.Cir.1988); SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed.Cir.1985). Neither side to this dispute suggests that any material fact remains in issue. Each side, however, argues that it is entitled to judgment as a matter of law. As the issue before us is one of law, we are free to decide the issue de novo.
 
 
 8
 B. As a preliminary matter, we reject the government's contention that Toshoku and FIC have waived their right to challenge the legality of Customs' demand for liquidated damages. According to the government, an assessment of liquidated damages against an importer and its surety is a "charge or exaction" within the meaning of 19 U.S.C. Sec. 1514 (1982) and therefore, unless timely protested, is final and conclusive on the parties. Under the government's approach, Toshoku and FIC could have challenged the legality of the assessment only by filing a protest under 19 U.S.C. Sec. 1514 followed by a suit under 28 U.S.C. Sec. 1581(a) (1982) if their protest was denied.
 
 
 9
 We do not agree. In United States v. Utex Int'l, Inc., 857 F.2d 1408, 1413-14 (Fed.Cir.1988), this court recently held, inter alia, that an assessment of liquidated damages is not a "charge or exaction" that must be challenged by protest under 19 U.S.C. Sec. 1514 (1982). Proof that the importer has complied with the conditions of the bond has traditionally been and still remains a complete defense to a collection suit brought on the bond. See id.; 1 P. Feller, U.S. Customs and International Trade Guide, Sec. 13.06, 13-31 (1988).
 
 
 10
 C. Before turning to the merits of the defenses raised by Toshoku and FIC, we need generally to survey the statutory and regulatory framework under which foodstuffs are imported into the United States. The basic statutory provision governing the importation of foodstuffs is 21 U.S.C. Sec. 381 (1982).[10]
 
 
 11
 The statutory scheme is enforced by the joint cooperation of the Secretary of the Treasury, through the Customs Service, and the Secretary of Health and Human Services, through the FDA. See 19 C.F.R. Sec. 12.1(a). The interplay between these two agencies was partially described by this court in United States v. Imperial Food Imports, 834 F.2d 1013 (Fed.Cir.1987), as follows:
 
 
 12
 When importing foodstuffs the importer or its broker must notify the FDA, which may issue a 'may proceed notice.' However, the FDA may determine that the merchandise should not be permitted to enter the country without proof of compliance with 21 U.S.C. Sec. 381(a)(3) (1982), which concerns adulterated food. In such a case, the FDA will issue a Notice of Sampling, 21 C.F.R. Sec. 1.90, and often a Notice of Detention and Hearing, 21 C.F.R. Sec. 1.94. If the importer does not respond to the Notice of Detention within ten days, a Notice of Refusal of Admission is issued, 21 C.F.R. Sec. 1.94. The importer then has ninety days to either export or destroy the foodstuffs. If the importer has not acted after ninety days, Customs issues a Notice of Redelivery, 19 C.F.R. Sec. 141.111 [sic Sec. 141.113]. If the importer fails to comply by redelivering the goods, the importer breaches its bond with Customs.
 
 
 13
 Id. at 1014. Not discussed in Imperial Food, however, is the exception in section 381(b) to the requirement in section 381(a) that the Secretary of Treasury is to destroy inadmissible foodstuffs that are not voluntarily exported by the importer.
 
 
 14
 Under 381(b), if the FDA is satisfied, upon request of the importer, see 21 C.F.R. Sec. 1.94(b), that articles refused admission may be brought into compliance by "relabeling or other action specified in such authorization (including destruction or export of rejected articles or portions thereof ...)," the shipment may be relabeled, etc. under the supervision of an officer or employee of the FDA or the Customs Service. More specifically, in order to avoid the harsh consequences dictated by section 381(a),[11] an importer whose shipment is denied entry solely under clause (3) of section 381(a) (due to adulteration, misbranding, or a violation of 21 U.S.C. Sec. 355) may request authorization to recondition the shipment in order to bring the same into compliance with U.S. law. 21 C.F.R. Secs. 1.94-1.96.
 
 
 15
 The burden to seek authorization to recondition the goods is upon the importer. An importer's failure to do so leaves him only with a choice of voluntary exportation (or destruction, see 19 C.F.R. Secs. 158.41, 45(c)) or redelivery to Customs. If the importer seeks authorization, however, and successfully satisfies the FDA that relabeling, etc. the goods will lead to compliance, final determination on the admissibility of the goods will be deferred pending such relabeling or other action. The execution of a bond by the importer is required to secure the government's interests in assuring that the goods are properly reconditioned. 21 C.F.R. Sec. 1.97.
 
 
 16
 D. Having considered the framework of section 381, the parallel between section 381(a) and paragraph 4 of the appended entry bond is clear. Paragraph 4 protects the government in the event that an importer fails to redeliver inadmissible foodstuffs to Customs' custody upon demand by the district director. Default in that obligation results in the liability for liquidated damages for the importer, 19 C.F.R. Sec. 141.113(g), and upon the importer's surety under the bond, 19 C.F.R. Sec. 172.1(a).
 
 
 17
 Likewise, it is clear that paragraph 7 of the bond protects the government's interest under section 381(b). Under paragraph 7 of the bond, if an importer requests authorization to recondition inadmissible goods and is granted permission from FDA to do so, but defaults in complying with the authorization, the importer and the surety are liable for liquidated damages.[12]
 
 
 18
 The facts underlying this appeal are insufficient, as a matter of law, to support Customs' demand for liquidated damages under paragraph 7 of the entry bond. Liability under that paragraph lies only when the importer requests and is granted authorization to recondition his goods in accordance with section 381(b) and then defaults in his obligation. Here liability does not lie under paragraph 7 of the entry bond because Toshoku never sought to recondition the shipment in order to bring the goods into compliance with U.S. law. The exception in section 381(b) to section 381(a) was not invoked by Toshoku. No liability, therefore, can be imposed based on the failure of Toshoku to recondition in a manner authorized by section 381(b).
 
 
 19
 The boilerplate direction in the Notice of Refusal of Admission purporting to require exportation of the inadmissible goods or risk their destruction does not impose upon the importer an affirmative obligation to export the goods. Neither does the parallel language in section 381(a). Instead, the importer may, at his option, choose to export the goods (or voluntarily destroy them) in order to avoid their destruction by Customs. By complying with the exporting (or destruction) option the importer will save the costs charged him for having Customs destroy the goods, 21 U.S.C. Sec. 381(c), and will obtain a refund of the estimated duties tendered, 19 C.F.R. Secs. 158.41, 45(c) (prohibited merchandise "may be exported under Customs supervision in accordance with Secs. 18.25-18.27 of this chapter, with refund of any duties that have been paid" (emphasis added)). However, in the alternative, the importer may, when Notice to Redeliver is given by Customs, redeliver the goods to Customs for destruction.
 
 
 20
 In its decision, the Court of International Trade determined that 19 C.F.R. Sec. 12.4 created an affirmative obligation to export prohibited merchandise in accordance with 19 C.F.R. Secs. 18.25 and 18.26. Section 12.4, however, does not require exportation, but only provides that the exportation of inadmissible goods must be in accordance with sections 18.25 and 18.26. These provisions, therefore, merely prescribe how merchandise is to be exported. See also 19 C.F.R. Sec. 158.45(c) (which refers to sections 18.25-18.27 for directions concerning how to export inadmissible goods). Exportation, however, is optional to the importer.
 
 
 21
 Because the conditions necessary to recovery under paragraph 7 of the bond were not satisfied, the Court of International Trade erroneously awarded summary judgment in favor of the government.
 
 
 22
 REVERSED.
 
 
 
 [1]
 The present dispute involves only Toshoku's liability in damages and nothing here said would authorize entry of adulterated tuna
 
 
 [2]
 The Notice of Refusal of Admission, Food and Drug Administration Form 772 (8/75), states:
 You are hereby notified that admission of the above-described merchandise is refused. This merchandise must be exported under Customs' supervision within 90 days from the date of this notice or within such additional time as the District Director of Customs specifies. Failure to do so may result in destruction of the merchandise as authorized by the statute.
 
 
 [3]
 The parties have not argued that the finality of liquidation, see United States v. Utex Int'l, Inc., 857 F.2d 1408 (Fed.Cir.1988), is applicable in this case. Here the Notice of Refusal of Admission was issued prior to the erroneous liquidation of the entry by Customs. See Utex at 1409 (obligations vested prior to liquidation are not comparable to post-liquidation obligations (distinguishing United States v. American Motorists Ins. Co., 10 CIT 19, 1986 WL 8339 (1986)))
 
 
 [4]
 Paragraph 4 of Customs Bond Form 7595 reads:
 (4) And if the above-bounden principal shall redeliver or cause to be redelivered to the order of the district director of customs, on demand by him, in accordance with the law and regulations in effect on the date of the release of said articles, any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States; or in default of redelivery after a proper demand on him, shall pay to said district director such amounts as liquidated damages as may be demanded by him in accordance with the law and regulations, not exceeding the amount of this obligation, for any breach or breaches thereof[.]
 
 
 [5]
 This amount equals the value of the entered tuna ($30,636.00) plus the amount of estimated duties ($1,838.16) as determined at the time of entry. See 19 C.F.R. Sec. 141.113(g) (1978) (regarding the amount of damages due the government when an importer fails to comply with Customs' demand to redeliver goods not entitled to admission into the United States)
 
 
 [6]
 Unless otherwise noted, all regulatory citations are to the 1978 Code of Federal Regulations, which was in effect at the time the tuna was imported
 
 
 [7]
 As the government admitted at oral argument, its failure to demand redelivery of the tuna precludes the right to collect liquidated damages under paragraph 4 of the entry bond
 
 
 [8]
 Paragraph 7 of Customs Bond Form 7595 reads:
 (7) And if the above-bounden principal after proper notice shall mark, label, clean, fumigate, destroy, export, and do any and all other things that lawfully may be required in the case of any and all merchandise found not to comply with the law and regulations governing its admission into the commerce of the United States, or, in default thereof, shall pay to the district director of customs as liquidated damages an amount equal to the value of the merchandise with respect to which there has been a default as set forth in the entry, plus the estimated duties thereon, as determined at the time of entry[.]
 
 
 [9]
 Because we conclude that the Court of International Trade erred in granting summary judgment to the government and not to Toshoku and FIC, we need not reach the government's appeal concerning the quantum of liquidated damages
 
 
 [10]
 21 U.S.C. Sec. 381 (1982) states in part:
 Sec. 381. Imports; list of registered foreign establishments; samples from unregistered foreign establishments; examination and refusal of admission
 (a) The Secretary of the Treasury shall deliver to the Secretary of Health and Human Services, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States,.... If it appears from the examination of such samples or otherwise that (1) such article has been manufactured, processed, or packed under unsanitary conditions or, ... (2) such article is forbidden or restricted in sale in the country in which it was produced or from which it was exported, or (3) such article is adulterated, misbranded, or in violation of section 355 of this title, then such article shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such article refused admission unless such article is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of the date of notice of such refusal or within such additional time as may be permitted pursuant to such regulations....
 Same; disposition of refused articles
 (b) Pending decision as to the admission of an article being imported or offered for import, the Secretary of the Treasury may authorize delivery of such article to the owner or consignee upon the execution by him of a good and sufficient bond providing for the payment of such liquidated damages in the event of default as may be required pursuant to regulations of the Secretary of the Treasury. If it appears to the Secretary of Health and Human Services that an article included within the provisions of clause (3) of subsection (a) of this section can, by relabeling or other action, be brought into compliance with this chapter or rendered other than a food, drug, device, or cosmetic, final determination as to admission of such article may be deferred and, upon filing of timely written application by the owner or consignee and the execution by him of a bond as provided in the preceding provisions of this subsection, the Secretary of Health and Human Services may, in accordance with regulations, authorize the applicant to perform such relabeling or other action specified in such authorization (including destruction or export of rejected articles or portions thereof, as may be specified in the Secretary's authorization). All such relabeling or other action pursuant to such authorization shall in accordance with regulations be under the supervision of an officer or employee of the Department of Health and Human Services designated by the Secretary of Health and Human Services, or an officer or employee of the Department of the Treasury designated by the Secretary of the Treasury.
 
 
 [11]
 As indicated in Imperial Food, foodstuffs denied entry must either be exported or destroyed voluntarily by the importer; otherwise Customs must demand redelivery for destruction by the government. Section 381(b) is the only exception to that mandate
 
 
 [12]
 Under Customs' current practice, Customs Bond Form 301 has replaced Customs Form 7595 here in issue. Instead of including the bond conditions on its face as did its predecessor, Form 301 incorporates by reference the conditions provided at 19 C.F.R. Sec. 113.62 (1988). See T.D. 84-213 (effective February 18, 1985). Condition (e) of that regulation comports with the language of paragraph 7 of the now superceded bond and is entitled "Agreement to Rectify Any Noncompliance with Provisions of Admission" (emphasis added)