NATIONAL CUSTOMS BROKERS AND FORWARDERS ASSN. OF AMERICA, Plaintiff,

v.

The UNITED STATES, et al., Defendants.

Court No. 89–07–00400.

United States Court of International Trade.

Oct. 10, 1989.

**1512**

Tompkins & Davidson, Brian S. Goldstein, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., U.S. Dept. of Justice, New York City, Susan Burnett Mansfield and Richard McManus, U.S. Customs Service, for defendants.

## OPINION

RESTANI, Judge:

Plaintiff, National Customs Brokers and Forwarders Association, Inc. (NCBFA, Association), brings this action seeking a preliminary injunction, a writ of mandamus, and a declaratory judgment to compel defendants, the Secretary of the Department of Treasury and the Commissioner of Customs (Customs), to promulgate regulations affecting the hierarchy of brokers entitled to enter goods in accordance with 19 U.S.C. § 1484(a)(2)(C) (1983). In its complaint plaintiff admits that this Court does not possess jurisdiction under 19 U.S.C. §§ 1581(a)–(h) and, therefore, it invokes this court's general jurisdictional grant under 28 U.S.C. § 1581(i) (1982).[1] That section provides this court with exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for ... administration and enforcement with respect to [various tariff and trade laws]." 28 U.S.C. § 1581(i)(4).

Defendants opposed the motion for a preliminary injunction on several grounds including: (1) lack of subject matter jurisdiction over the issue in dispute; (2) lack of standing; and (3) failure to satisfy the standard four factor test for ascertaining whether preliminary injunctive relief should be granted. *See Matsushita Elec. Indus. Co. v. United States*, 823 F.2d 505, 509 (Fed.Cir.1987); *S.J. Stile Assoc., Ltd. v. Snyder*, 68 CCPA 27, 29–32, 646 F.2d 522, 525–27 (1981). This court will discuss each of these issues *seriatim.*

### I. BACKGROUND

Soon after the expansion of private international courier services in the late 1970s Customs issued rulings under former section 1483 of the Tariff Act of 1930, ch. 497, 46 Stat. 590, 721, 19 U.S.C. § 1483 (1930), *amended,* Pub.L. 95–410, 92 Stat. 901 (1978), *repealed,* Pub.L. 97–446, 96 Stat. 2349 (1983), acknowledging that courier

---

1. This sub-section was amended in Pub.L. 100–449, 102 Stat. 1852 (1989). That amendment, however, is not relevant to the present proceeding.

services could enter consolidated shipments into the country without resort to the assistance of properly licensed customs brokers. *See* 15 Cust. Bull. 273, Treas. Dec. 81–108 (1981) & 15 Cust. Bull. 1065, Cust. Serv. Dec. 81–169 (1981). In response to the perceived inadequacy of this procedure, Congress, in 1983, amended section 1484, *inter alia,* to require courier services to employ properly licensed brokers when entering consolidated shipments through customs. Pub.L. 97–446, 96 Stat. 2329, 2350 (1983) (codified as amended at 19 U.S.C. § 1484(a)(2)(C) (1982)).[2] In an attempt to comply, courier services employed their own brokers, who expedited entry of bulk consolidated shipments without referring individual pieces of merchandise to those brokers or ports designated on the individual bills of lading. Customs generally permitted expedited entry by simple reference to a master bill of lading on which all individual entries were logged. This practice continues to the present time.

According to plaintiff NCBFA, this procedure is not a proper implementation of the statute as amended. NCBFA maintains that the "appropriately designated" broker specified in section 1484(a)(2)(C) is the broker originally chosen by the owner, purchaser, or consignor of each individual shipment consolidated under the master bill of lading. Hence, argues the Association, if a single set of merchandise in a consolidated shipment has attached to it a bill of lading designating a port of entry other than that used by the courier service (or specifying a broker other than the one employed by the courier service), Customs should honor the original request of the consignor of that piece of merchandise by requiring the courier service to deconsolidate the entire shipment and by directing the courier service to proceed with entry of the merchandise according to the specific instructions on the individual bill of lading.

Indeed, this latter approach to entry of consolidated shipments was considered seriously by Customs and, for the most part, was reflected in a series of proposed rules which were withdrawn finally on February 1, 1989. *See Withdrawal of Proposed Customs Regulations,* 54 Fed.Reg. 5091 (1989). Customs withdrew the proposed regulations because "many of the commentators [considered the regulations] unnecessary and commercially burdensome." *Id.* In addition, Customs "determined that [it] should not be involved in refereeing contractual agreements between parties regarding the selection of a customs broker to make entry." *Id.* Dissatisfied with this result, NCBFA filed the present action.

## II. JURISDICTION

■ As noted above, NCBFA claims that jurisdiction over this action is found in section 1581(i)(4). Section 1581(i)(4) contains Congress' residual grant of jurisdiction over various conflicts and disputes arising out of United States tariff and international trade laws. *Di Jub Leasing Corp. v. United States,* 1 CIT 42, 43–44, 505 F.Supp. 1113, 1115–16 (1980) (*citing* House Judiciary Committee Report, H.R.Rep. No. 96–1235 at 27–28, *reprinted in* 1980 U.S. CODE CONG. & ADMIN. NEWS 3729, 3739–3740). In interpreting the language of sections 1581(i)(1) & (4) and their accompanying legislative history, this court held in *Di Jub Leasing* that it had jurisdiction to consider the Commissioner of Customs' revocation of a customshouse cartman's license even though such jurisdiction was not explicitly provided for in section 1581. *Id.* at 44–49, 505 F.Supp. 1116–19. The court reasoned that the revocation of a cartman's license under Customs' regulations was intertwined with and directly re-

---

**2.** 19 U.S.C. § 1484(a)(2)(C) now reads:

When an entry of merchandise is made under this section, the required documentation shall be filed either by the owner or purchaser of the merchandise or, when appropriately designated by the owner, purchaser, or consignee of the merchandise, a person holding a valid license under section 1641 of this title. . . .

19 U.S.C. § 1641(b)(1) (Supp. V 1987) now reads:

No person may conduct customs business (other than solely on behalf of that person) unless that person holds a valid customs broker's license issued by the Secretary under paragraph (2) or (3).

lated to the administration and enforcement of the laws providing for revenue from imports. *Id.* at 46, 505 F.Supp. at 1117. In addition, in *Nat'l Bonded Warehouse Ass'n, Inc. v. United States*, 13 CIT ——, 706 F.Supp. 904, 908 (1989) the court recently cited *Di Jub Leasing* in support of the proposition that it has jurisdiction under 28 U.S.C. § 1581(i)(4) to hear challenges to assessments of annual bonded warehouse fees. *Nat'l Bonded* at 905–08. *See also* 19 U.S.C. § 1555 (1982).

Most recently, in *Sharp Electronics Corp. v. United States*, 13 CIT ——, Slip. Op. 89–129, 1989 WL 107365 (Sept. 13, 1989), the court held that Section 1581(i) jurisdiction also encompasses the administration of a settlement agreement in an antidumping action because "resolution of whether the term ['traditional methodology'] is being properly implemented [under the agreement] requires particularized knowledge and proficiency with the antidumping duty laws" and that the action involved there challenged "the administration and enforcement of [those] laws." *Id.* at 5 & 6. Defendants, nonetheless, cite *Sharp Electronics* as if it should be interpreted to limit Section 1581(i)(4) because *Sharp* at 4 cites language of *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 108 S.Ct. 950, 99 L.Ed.2d 151 (1988), to the effect that Congress chose not to "commit to the Court of International Trade's exclusive jurisdiction *every* suit against the Government challenging customs-related laws and regulations." *K Mart* 108 S.Ct. at 958 (emphasis in original). Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction at 12. This court, however, cannot find any language in *Sharp Electronics* which indicates that § 1581(i)(4) is narrower than it reads. *Sharp*, rather, supports plaintiff's view that section 1581(i) applies to the instant case because this case falls literally within § 1581(i) and because it involves interpretation of tariff laws within the expertise of this court. *K Mart* is clearly distinguishable.

In *K Mart* district court jurisdiction was challenged. Plaintiff had sought to prevent the Customs Service from permitting the importation of certain trademarked goods, known as gray-market goods. In finding that the district court had jurisdiction to decide the matter before it, the Supreme Court held that the action was not within the exclusive jurisdiction of the Court of International Trade, because the case did not involve embargoes, *K Mart* 108 S.Ct. at 957–58, or administration and enforcement with respect to protestable matters. *Id.* at 959–60. The court ruled that the issue before it involved the interpretation of the trademark laws, an area over which the district courts traditionally have had jurisdiction. *K Mart* at 958–59; *see also* 28 U.S.C. § 1338(a) (1982). The instant case, however, not only is intertwined with the administration and enforcement of the laws dealing with tariffs, as *K Mart* was not, *see* section 1581(i)(1) & (2) in connection with section 1581(i)(4), but raises issues related to subsidiary areas clearly within the court's jurisdiction. That is, this case involves issues relating to the administration of customs brokers licenses and permits, 19 U.S.C. § 1641, and, more directly, to the proper procedures under the customs laws for entry of merchandise, 19 U.S.C. § 1484. *See* 28 U.S.C. §§ 1581(a) & (g). Such issues ordinarily are not the subject of district court litigation and the district courts generally lack expertise in such areas. Thus, for several reasons *K Mart* is of no avail to defendants in the instant case.

Nonetheless, this court is not unmindful of parallel proceedings on precisely the same issue in the District of New Jersey. That court transferred a dispute involving facts and legal issues substantially similar to the instant one to the Eastern District of New York because plaintiff's "member customs brokers [did] business primarily in the vicinity of JFK airport." *JFK Airport Customs Brokers Ass'n Inc. v. United States*, No. 88–4663 at 40 (D.N.J. June, 28, 1989). In a lengthy explanation of the issues in the case, the court was required to discuss various provisions of the customs laws, *id.* at 2–8, and decisions of this court or its predecessor, in particular *Top Form Brassiere Mfg. Co. v. United States,*

68 Cust. Ct. 288, 342 F.Supp. 1167 (1972) (interpreting former sections 1483 and 1484). *JFK* at 6. Although the district court addressed a standing issue, it apparently was not faced with a jurisdictional question of the type discussed here. Therefore, that case adds no support to defendants' jurisdictional argument.

■ Finally, defendants argue that, as stated in *National Corn Growers Ass'n v. Baker*, 840 F.2d 1547 (Fed.Cir.1988), the creation of "new causes of action" is not permitted under section 1581(i). While it is axiomatic that section 1581(i) does not create new causes of action, *see* H.R.Rep. No. 96–1235, *supra*, at 27–28, 1980 U.S. CODE CONG. & ADMIN. NEWS at 3739–3740, certain challenges to administrative action which formerly could have been brought in district court are now brought in the Court of International Trade pursuant to section 1581(i). *Id.* at 33, 1980 U.S. CODE CONG. & ADMIN. NEWS at 3744–3745.[3]

In *Nat'l Corn Growers* the Federal Circuit held that jurisdiction did not exist under section 1581(i), essentially because such jurisdiction may not be invoked where there is manifest Congressional intent that plaintiff follow a specific statutory path before seeking judicial review, and such path was not followed. In so holding, the Federal Circuit observed that the court must "confine judicial review to the channels and the relief Congress intended". *Id.* at 1552. By contrast, in this case there was no mandatory administrative remedial course for plaintiffs to follow under any provision of the tariff laws or of Title 28 of the United States Code. Here, there is no manifestation of Congressional intent that some avenue of judicial review other than section 1581(i) is to be followed or that opportunity for review is to be denied entirely. Exercise of jurisdiction under 19 U.S.C. § 1581(i)(1), (2) & (4) in this case, therefore, is entirely proper.

## III. STANDING

As their next challenge to plaintiff's action, defendants assert that NCBFA lacks standing to present its claims before this court because not all NCBFA members support the bringing of this suit. Plaintiffs rely on *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) and *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988).

In *Hunt v. Washington Apple Advertising Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977) the Supreme Court established a three part test to ascertain whether unincorporated associations have standing to bring a claim. The court held that:

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. at 2441. Additionally, in *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) the court noted at length that:

> [e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members.... The possibility of such representational standing, however, does not eliminate or attenuate the constitutional requirement of a case or controversy.... The association must allege that its members, *or any one of them,* are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.

*Id.* at 511, 95 S.Ct. at 2211–12 (citations omitted; emphasis supplied). The remedy sought by the Association, therefore, must "inure to the benefit of those members of the association actually injured." *Id.* at 515, 95 S.Ct. at 2213.

---

**3.** The court finds defendant's argument that plaintiff's action is an attempt to circumvent the restrictions of the protest mechanism completely untenable.

The Supreme Court has recognized on several other occasions that a voluntary membership association has standing to assert the claims of its members even where that association, as an entity, has suffered no direct harm from the activity. *See, e.g., Nat'l Freight Ass'n v. United States,* 372 U.S. 246, 247, 83 S.Ct. 688, 689, 9 L.Ed.2d 709 (1963); *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 460–66, 78 S.Ct. 1163, 1170–73, 2 L.Ed.2d 1488 (1958). This observation holds particularly where the association is a "traditional voluntary membership organization" or "a typical trade association" like NCBFA. *Hunt* 432 U.S. at 342, 97 S.Ct. at 2441 (*citing, inter alia, Warth v. Seldin, supra*).

Defendants, nonetheless, focus on *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988), in which the Supreme Court stated that "complete identity between the interests of [a] consortium [of clubs] and those of its member associations" dispenses with the requirement that individual members participate in the suit. *Id.* 108 S.Ct. at 2232 n. 4. Defendants argue that the association's interest must mirror that of each of its members. The Supreme Court did not so hold in *New York State Club Ass'n.* Furthermore, nothing in the Supreme Court's long-standing standing decisions on this issue suggests that it will significantly alter its course to adopt the government's proposed position as opposed to the simple three-part test of *Hunt.*

█ It appears undisputed that this action, if successful, will benefit some and, probably, a substantial majority of plaintiff's members. Plaintiff's counsel asserted at oral argument that NCBFA rules grant its Board of Directors the power to authorize the institution of proceedings on the Association's behalf. Plaintiff's counsel further pointed out that were defendants' position to prevail, a minority of Association members could always disrupt an association's litigation or administrative goals as supported by a majority of its members. This court agrees. Thus, based on the arguments presented thus far, the court finds that plaintiff has standing to bring this action.

## IV. PRELIMINARY INJUNCTION

█ In *Rhone–Poulenc, Inc. v. United States,* 880 F.2d 401 (Fed.Cir.1989), the Federal Circuit recognized the equity powers granted this court under 28 U.S.C. § 1585 (1982). Under that section the court has "all the powers in law and equity of, or as conferred by statute upon, a district court of the United States." *Id.* Accordingly, the court is given broad discretion to determine whether preliminary equitable relief should be granted. *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 320, 102 S.Ct. 1798, 1807, 72 L.Ed.2d 91 (1982); *S.J. Stile Assoc.* 68 CCPA at 29–30, 646 F.2d at 525 (1981) (*citing A–Copy, Inc. v. Michaelson,* 599 F.2d 450, 452 (1st Cir.1978)). The court must ascertain whether plaintiff is entitled to some preliminary injunctive relief by balancing the relative consequences to the parties involved under the following four factors:

(1) a threat of immediate irreparable harm [to the moving party]; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardships on the parties favors [the moving party].

*S.J. Stile,* 68 CCPA at 30, 646 F.2d at 525.

The court is permitted to weigh these factors on a "sliding scale" basis. *See Zenith Radio Corp. v. United States,* 710 F.2d 806, 812 (Fed.Cir.1983) (Nies, J. concurring) ("while these factors should be analyzed separately, they must be evaluated as a whole"); *Algoma Steel Corp., Ltd. v. United States,* 12 CIT ——, 696 F.Supp. 656, 658 n. 2 (1988); *The Timken Co. v. United States,* 11 CIT 506–07, 666 F.Supp. 1558, 1559–60 (1987); *American Air Parcel Forwarding Co. v. United States,* 1 CIT 293, 299–300, 515 F.Supp. 47, 53 (1981).

At oral argument on this motion plaintiff's counsel maintained that the preliminary papers filed on behalf of NCBFA established the actual threat of harm present in this case, the possibility of NCBFA's success on the merits, the public interest in

the matter, and the balancing of the competing interests involved. Plaintiff's counsel argued that Customs' failure to implement section 1484 properly with regard to brokers' rights to enter consolidated shipments was responsible for direct and immediate injury to the members of the association. By permitting a courier's broker to enter the goods listed on a master bill of lading, while disregarding an individual consignor's wishes for a specific broker or port, Customs allegedly is discriminating against individually specified consignees and brokers. According to plaintiff's counsel, Customs is precluded under 19 U.S.C. § 1484 from proceeding in this manner.

Where the preliminary relief sought is substantially similar to the relief plaintiff seeks at the end of litigation the court should be especially careful to ascertain plaintiff's likelihood of success on the merits. *See Bailey v. Romney*, 359 F.Supp. 596, 600 (D.D.C.1972). It is not clear, from a plain reading of the applicable laws, that plaintiff is likely to prevail. On its face, the statutory amendment at issue could be read to deal simply with assuring entry by the actual owner or purchaser of the merchandise or by a licensed broker. Furthermore, the legislative history, as presented to the court in plaintiff's preliminary papers and at oral argument, does not clearly indicate to the court at this point in the proceedings that Customs acted unreasonably or not according to the law. *See e.g.* H.R.Rep. No. 989, 97th Cong., *reprinted in* 1982 U.S. CODE CONG. & ADMIN. NEWS 4078, 4137, 4140. While plaintiff may yet succeed, this factor cannot be said to be strongly in its favor.

In addition, whether plaintiff's members are suffering harm warranting the issuance of a preliminary injunction is disputable. While some of NCBFA's members may have lost some business in the past (and may still be losing some business), quantifiable evidence of this loss was not submitted to this court. Furthermore, despite post-amendment continuation of Customs practice of allowing the consolidated shipper to control entry, at least in part, by designating the broker chosen by

itself, plaintiff did not immediately seek injunctive relief. Rather, plaintiff chose the present route of awaiting Customs' actions with regard to proposed regulations, filing suit to seek a legal determination by this court, and later filing this motion for injunctive relief. While plaintiff cannot be faulted for first attempting an administrative solution, the court is not convinced that each step towards a preliminary injunction has been pursued at a pace consistent with a necessity for immediate action to prevent further harm.

Plaintiff's counsel at oral argument stated that, in balancing the public interest and the hardships involved, the court should consider that no individual has a vested right to the benefits of a policy or procedure which is not in accordance with law. Therefore, argued plaintiff's counsel, equity requires that Customs non-action be prevented. By abrogating brokers' rights as set forth in section 1484, Customs allegedly is creating undue hardships on plaintiff's members and, consequently, issuance of a preliminary injunction is said to be warranted on balance.

Putting aside the underlying question of whether here Customs is acting in accordance with law, the Supreme Court has stated that "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944). In this case, defendants have presented some proof that severe administrative and commercial disruptions could result were preliminary relief granted plaintiff. Specifically, the Director of the Office of Cargo Enforcement and Facilitation of the Customs Service noted that a preliminary injunction in the instant action would cause "incalculable delays in entry processing [ ] because Customs [would have] to find out whether or not the consignee named in each individual bill of lading had designated a broker other

than the broker designated by the consignee named in the master bill for the purpose of making entry." Declaration of Albert W. Tennant. Attachment 3 to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction at 2, ¶ 8. In addition, the Brokerage Manager of UPS Customhouse Brokerage, Inc. averred that mandatory deconsolidation of every shipment would add the additional burdens of *at least* $200.00 per package and a three to four day delay in its receipt. As a result, "the Company would be unable to provide its customers with expedited international delivery service." Affidavit of United Parcel Service. Attachment 4 to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction at 5–6, ¶¶ 13 & 14. Gerald Finn of the Federal Express Corporation submitted an affidavit to the same effect. *See* Attachment 5 to Defendant's Opposition. Accordingly, the court declines to direct Customs to act in the manner desired by plaintiffs without ascertaining finally whether there is a legal basis to the claim that Customs violated the mandate of section 1484(a)(2)(C) by failing to promulgate regulations in accordance therewith.

The issue before this court is a legal one and it can be disposed of expeditiously and without the necessity of finding numerous disputed facts. Justice is thus better served by awaiting a full briefing by both parties on the merits of the various claims. Defendants' answer is now filed and a briefing schedule has been set.

For the foregoing reasons plaintiff's motion for a preliminary injunction is denied.