Pope Products, division of Purex, plaintiff *v.*
United States, defendant

Court No. 89-05-00254

(Dated June 18, 1991)

*Fitch, King & Caffentzis (Peter J. Fitch)* for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, *(Barbara M. Epstein)* United States Department of Justice, Civil Division, Commercial Litigation Branch, for defendant.

OPINION

RESTANI, *Judge:* This action is before the court on a motion to dismiss.

Plaintiff, Pope Products, Division of Purex ("Pope"), brings suit seeking to recover the money which Pope had tendered to the Customs Service ("Customs"). The funds were tendered in order to obtain administrative review of the determination that Pope owed the funds under the terms of the bond securing its obligations with regard to imported merchandise. Defendant maintains that in order for jurisdiction to lie, Pope was required to protest a first notice of the assessment of damages and demand for payment of the damages, rather than the later results of the administrative review. Defendant argues that this action should be dismissed because the denial of a petition for administrative relief is not a decision with respect to a "charge or exaction" within the meaning of 19 U.S.C. § 1514(a)(3) (1988) and, therefore, is not a protestable event.

For reasons explained herein, this court finds plaintiff could have protested neither the notice of the assessment of liquidated damages and the demand for payment, nor Customs' denial of any of its petitions for mitigation. Further briefing is required as to plaintiff's alternative basis for jurisdiction under 28 U.S.C. § 1581(i)(4) (1988).

BACKGROUND

The sequence of events leading up to this action may be summarized as follows. On November 20, 1981, Pope imported approximately 3600 cartons of canned tomatoes into the United States. On December 28, 1981, the entry in question was liquidated. On January 13, 1982, after liquidation had occurred, the Food and Drug Administration issued a notice of refusal of admission of the goods stating that failure to export the goods could result in their destruction.[1]

On April 21, 1982, Customs issued a "Notice Of Penalty Or Liquidated Damages Incurred And Demand For Payment" (Customs Form 5955A, hereinafter referred to as "Notice and Demand for Liquidated Damages" or "Notice") in the amount of $35,973.36, to Pope, based on

---

[1] The Food and Drug Administration had found excessive mold and issued a Notice of Detention and Hearing. Pope made no effort to bring the goods into compliance.

Pope's failure to export or destroy merchandise which the Food and Drug Administration had determined to be inadmissible because of its condition.

On May 18, 1982, a petition for mitigation was submitted to Customs by Pope's customs broker on behalf of Pope, pursuant to part 172.00, *et seq.* of the Customs regulations. Customs denied the petition on August 17, 1983. A supplemental petition for mitigation was submitted by Pope which was denied by Customs on December 30, 1985.

On September 8, 1986, Pope presented Customs with a second supplemental petition for mitigation. Because 19 C.F.R. § 172.33 requires that the petitioner pay the liquidated damages due in order to receive this additional administrative review, Pope enclosed a check for $35,973.36. On December 16, 1987, the Regional Commissioner of Customs denied the petition.

Plaintiff filed a protest of this decision with Customs on March 15, 1988, claiming that the money it had tendered with the second supplemental petition was an exaction. Customs advised Pope on November 25, 1988 that a denial of a petition for mitigation was not a protestable decision.

On May 10, 1989, Pope filed a summons alleging that the amount paid to Customs was a "charge or exaction" and, therefore, the denial of the second supplemental petition was a protestable decision.

## CONTENTIONS OF THE PARTIES

Defendant has filed a motion to dismiss the case contending, first, that plaintiff failed to file a timely protest against Customs' Notice and Demand for Liquidated Damages. Specifically, the government argues that the Notice and Demand for Liquidated Damages was a protestable decision because it qualified as a "charge or exaction" and was protestable under 19 U.S.C. § 1514(a). The parties are in accord that plaintiff did not file a protest to this notice.

Defendant also contends that Customs' denial of plaintiff's second supplemental petition was not a protestable decision because the voluntary submission of liquidated damages which accompanied the petition did not qualify as a "charge or exaction." Lastly, defendant argues that the court does not have the power to review a decision of the Secretary of the Treasury when such decision is an exercise of the Secretary's discretionary power. Defendant alleges that the discretionary power to mitigate damages and penalties has been given to Customs and the court may not review the merits of the resulting decision.

Plaintiff responds to the motion to dismiss by arguing, first, that the assessment of liquidated damages was without any basis in law because the entry was liquidated prior to the refusal of admission by the Food and Drug Administration. Plaintiff argues that it was not required to protest the Notice and Demand for Liquidated Damages. Plaintiff states that the Notice is not a final assessment, but rather an initial demand which is subject to a mitigation procedure that allows for the eventual assessment of a lesser sum.

Primarily, however, plaintiff contends that the decision of the Regional Commissioner on December 16, 1987 constituted a protestable decision under 19 U.S.C. § 1514(a)(3) because it can be viewed as the relevant decision as to a "charge or exaction." It is plaintiff's position that a final, protestable, decision arises when the final opportunity for further administrative consideration has expired, and Customs has no further decisions to make. Since a second supplemental petition is permitted by the regulations, plaintiff argues that the final decision is the one made regarding this petition.

Alternatively, plaintiff argues that 28 U.S.C. § 1581(i) provides the court with jurisdiction over the matter[2] because, as a matter of logic, if a protest does not lie at either the notice or the payment stage, then there must be some avenue for judicial review.

## DISCUSSION

Basically there are two types of jurisdictional bases at issue. The first is based on denial of a protest and the second is general jurisdiction over administration of import matters. See 28 U.S.C. § 1581(a) and (i) (1988). If protest denial jurisdiction is available to the importer, such jurisdiction is exclusive. Therefore, protest denial jurisdiction must be addressed at the outset. *See Di Jub Leasing Corp. v. United States,* 1 CIT 42, 43–44, 505 F. Supp. 1113, 1114–15 (1980) (where the court discusses the residual nature of 28 U.S.C. § 1581(i) jurisdiction).

In order to obtain judicial review of the denial of a protest, the protest must be filed by an importer of record within ninety days of the relevant decision, 19 U.S.C. § 1514(c)(2), and a civil action must be commenced within 180 days of the denial of that protest. 28 U.S.C. § 2636(a)(1). Unless a timely protest is lodged, the decision of the Customs official is "final and conclusive." *See National Corn Growers Ass'n v. Baker,* 840 F.2d 1547 (Fed. Cir. 1988).

This court has jurisdiction under 28 U.S.C. § 1581(a) over denials by Customs of protests filed under 19 U.S.C. § 1515. The subjects of § 1515 protests are prescribed in 19 U.S.C. § 1514(a), which lists seven specific categories of decisions by Customs that qualify as protestable decisions. It is undisputed that the relevant protest category in this case is "all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury." 19 U.S.C. § 1514(a)(3). At this stage of analysis, the question for the court is whether the Notice of Demand for Liquidated Damages or any of the subsequent denials of administrative relief were protestable events.

1. *The Notice of Demand for Liquidated Damages was not protestable.*

The government urges the court to rule that plaintiff should have filed its protest after receiving the Notice of Demand for Liquidated

___

[2] In general terms, this statute gives the court jurisdiction over any civil action arising out of any law regarding imports, tariffs, duties or other import taxes, embargoes or other quantitative restrictions, denial of trade adjustment assistance, denial and revocation of customs brokers licenses, and administration and enforcement of all of the above-noted matters. *See infra,* n. 11.

Damages on April 21, 1982. Although the name of the notice, "Notice Of Penalty Or Liquidated Damages Incurred And Demand For Payment," might sound sufficiently imposing to represent a decision as to a "charge or exaction" within the meaning of § 1514(c)(3), the clear weight of precedent points to the contrary.

The Court of Appeals for the Federal Circuit has addressed this issue directly in a pair of cases, *United States v. Toshoku America, Inc.*, 879 F.2d 815 (Fed. Cir. 1989) (*"Toshoku"*) and *United States v. Utex International Inc.*, 857 F.2d 1408 (Fed. Cir. 1988) (*"Utex"*). In *Toshoku*, the court stated that "an assessment of liquidated damages is not a 'charge or exaction' that must be challenged by protest under 19 U.S.C. § 1514." *Toshoku, supra,* at 818.[3] Likewise, in *Utex,* the court held that issuance of a Notice of Penalty or Liquidated Damages Incurred and Demand for Payment was not an event which the surety might protest. *Utex, supra,* at 1414.[4] Moreover, in a suit initiated by the importer, this court has addressed the identical issue and reiterated that a Notice of Demand for Liquidated Damages does not constitute a protestable decision.

In *Halperin Shipping Co., Inc. v. United States,* 14 CIT 438, 742 F. Supp. 1163 (1990), plaintiff sought to recover Customs duties it allegedly was forced to pay twice. Plaintiff claimed it paid the duties to its broker, for remittance to Customs. The money was never remitted and two years later plaintiff received a Notice of Liquidated Damages Incurred and Demand For Payment. In response to this Notice, plaintiff neither filed a protest nor petitioned for mitigation of the damages due. Subsequently, plaintiff and the government engaged in negotiations aimed at settling the claims. After these negotiations, the then-Assistant Secretary of the Treasury notified plaintiff by letter of the final offer of settlement. The letter stated that the government would bring suit within the week if the money was not paid. Plaintiff made another offer of settlement to Customs but tendered payment of the requested amount. Customs accepted this offer and the money, and thereafter closed its files on the case. Plaintiff then attempted to protest the letter, contending that the letter constituted a "demand for payment" and, therefore, fell within the "charge or exaction" language of 19 U.S.C. § 1514(a)(3).

The court found the letter to be the "culmination of long series of voluntary settlement negotiations entered into by Halperin to diminish its liability on the outstanding claims." *Halperin,* 742 F. Supp. at 1167. The court held that the Walker letter was not a "charge or exaction" because "it did not assess a specific sum of money relating to specific entries of merchandise * * * and because Halperin was under no compulsion to tender any settlement payments to the government on account of the

---

[3] In *Toshoku* the government brought suit to recover unpaid liquidated damages assessed under an entry bond. The government contended that the importer waived its right to challenge the legality of Customs' demand for liquidated damages. Citing *Utex,* the *Toshoku* court rejected this argument.

[4] In *Utex* the government brought action on a surety bond following importation of contaminated frozen shrimp. The government argued that, in order for the surety to have preserved the right to contest the government's demand for liquidated damages, protest must have been lodged within ninety days of the demand. The court rejected this argument.

letter." *Id.* In reaching this decision, the *Halperin* court also held that the Notice of Demand for Liquidated Damages was not a protestable decision. The court stated that the government's contention that the Notice was a protestable decision "has been squarely rejected by the Court of Appeals for the Federal Circuit, which has held that 'an assessment of liquidated damages is not a "charge or exaction" that must be challenged by protest under 19 U.S.C. 1514 * * *'" 742 F. Supp. at 1166–67 (citing *Toshoku*).[5]

Defendant cites *St. Paul Fire and Marine Ins. Co. v. United States,* 14 CIT 43, 729 F. Supp. 1371 (1990) for the proposition that a demand for liquidated damages is protestable. Regardless of any language in *St. Paul* to that effect, such a proposition must be rejected as it conflicts with *Toshoku* and *Utex.*

Defendant also cites *Peerless Ins. Co. v. United States,* 12 CIT 1231, 703 F. Supp. 104 (1988), *aff'd,* 891 F.2d 298 (Fed. Cir. 1989), for the proposition that actions must be dismissed as untimely if the protest is filed more than ninety days after the first valid notice and demand for liquidated damages. *Peerless* is inapposite. In *Peerless,* the court dismissed the action because the protest of the *liquidation* was not filed within ninety days of the demand on the surety. Where the issues merge into liquidation, as in that case, under a special statutory provision the surety has ninety days from the date of demand to lodge a protest of the liquidation decision. *See* 19 U.S.C. § 1514(c)(2). The demand itself remains unprotestable.

In addition, the court finds that *American Motorists Ins. Co. v. United States,* 14 CIT 298, 737 F. Supp. 648 (1990), also cited by defendant, is not relevant to the issue at bar. In *American Motorists,* the court was concerned with the sufficiency of the notice to the surety and whether a purported notification and demand for payment constituted a formal notice of demand for payment under § 1514(c)(2), as set forth in *Old Republic Ins. Co. v. United States,* 10 CIT 1, 4–5, 625 F. Supp. 983, 986 (1986) (which held that a demand for payment must provide a surety with "sufficient means of ascertaining the bond on which demand for payment is being made"). As indicated, demand starts the running of the surety's ninety days to protest the liquidation decision. Here the liquidation was in plaintiff's favor, thus neither the importer nor the surety had reason to protest it. In sum, the court rejects defendant's argument that the Notice of Demand for Liquidated Damages is a protestable decision.

2. *Denial of the Second Supplemental Petition was not protestable.*[6]

The next issue to be addressed is whether the protested decision in this case—denial of plaintiff's second supplemental petition for mitigation—is a decision as to a "charge or exaction" within the meaning of

---

[5] Ultimately *Halperin* was dismissed. The opinion contains no discussion of 28 U.S.C. § 1581(i) jurisdiction.

[6] Two earlier petitions were denied, but no one argues that those were protestable events.

§ 1514(a)(3). Plaintiff argues that the regulations provide for an administrative scheme which ends with a second supplemental petition. *See* 19 C.F.R. § 172.33(c). The petitioner must deposit the full amount of the liquidated damages allegedly due, a specific amount of money ($35,973.36), with this final petition. Plaintiff views this as a "charge or exaction."

Defendant cites *Carlingswitch, Inc. v. United States,* 85 Cust. Ct. 63, C.D. 4873, 500 F. Supp. 223 (1980), *aff'd,* 68 CCPA 49, C.A.D. 1264, 651 F.2d 768 (1981) for the proposition that the payment is voluntary and not a "charge or exaction." In *Carlingswitch* the trial court determined that although the amount tendered by plaintiff was as a result of a penalty investigation, it did not result from a *demand.* It found the payment to be voluntary and not a "charge or exaction." Thus, a decision not to refund the tendered amount was not a *decision* as to a "charge or exaction," nor was the refusal to refund the "charge or exaction." Apparently finding irrelevant the issue of whether the monies were tendered voluntarily, the appellate court stated that "It is the *refusal to refund* which appellant alleges to be a 'charge or exaction,' however, not the two *payments* made to the Customs Service. * * * That a refusal to refund money is not a § 1514 'charge or exaction' is the basis upon which we affirm the decision granting appellee's motion for summary judgment." *Id.* at 54, 651 F.2d at 773 (emphasis in original). Assuming that *Carlingswitch* is distinguishable because plaintiff here argues that the *payment* is the exaction, and the decision not to return the payment is the protestable decision as to the charge or exaction, plaintiff faces the problem of the non-mandatory nature of the mitigation proceedings and, hence, the alternative reasoning of the trial court in *Carlingswitch,* which was not expressly rejected by the appellate court.[7]

One might argue that the trial court's decision in *Carlingswitch* as to voluntariness does not apply because a demand was made in this case. Thus, the facts here come closer to compulsion. This issue was addressed in a more recent case, *ITT Semiconductors v. United States,* 6 CIT 231, 576 F. Supp. 641 (1983).[8] In *ITT,* plaintiff paid the full amount requested by Customs in settlement of the case, and then filed a second supplemental petition for mitigation. Plaintiff protested the denial of the second supplemental petition. The court stated that:

> It is the position of the plaintiff that the payment of $48,153.04 [the amount paid to Customs] was a charge or exaction because there was no avenue for avoiding the threatened lawsuit for forfeiture value except by depositing the monies demanded by the government. Plaintiff argues that absent an alternative to the mitigation

---

[7] Although *Carlingswitch* is somewhat useful to a determination of what constitutes a "charge or exaction," the court notes that § 1581(i) jurisdiction was not an available means of granting jurisdiction in the case. This jurisdiction applies to civil actions commenced on or after November 1, 1980. The trial court in *Carlingswitch* entered its decision finding no jurisdiction on September 18, 1980.

[8] Both *ITT* and *Carlingswitch* preceded *Utex* and *Toshoku.*

> procedure the payment tendered was made under coercion and compulsion. This court cannot agree with plaintiff's position.

*Id.* at 234–35, 576 F.Supp. at 644. The court reasoned that the monies were part of a settlement in mitigation of penalties assessed upon the entries that were the subject of that and other actions. The court looked at the plain meaning of the word "exaction" and found that there needed to be some element of compulsion on the part of Customs. The court further noted that

> Since plaintiff chose to pay the amount in dispute as an alternative to being sued, this court does not find the defendant compelled payment or that payment was made involuntarily.
>
> \* \* \* \* \* \* \*
>
> Since payment in the case at hand was a means of mitigating a claim and optional on the part of the parties, this court can only conclude that the decision to pay the settlement amount was by the exercise of free will and not by compulsion on the part of the defendant.

*Id.* at 235, 237, 576 F.Supp. at 644, 646.

The case at bar, while not a settlement case in that the full amount of the original demand is at issue, did include optional payment on the part of the plaintiff. Although payment itself was not optional in the sense that it was a prerequisite to the second supplemental administrative review, the administrative *procedure* necessitating payment was optional in the sense that it was not a prerequisite to judicial review.[9]

The voluntariness issue is a close one and need not be resolved here. Despite whatever compulsion one might perceive stemming from either the original demand in this case or the overall administrative scheme, one cannot denominate the opportunity to pay and obtain administrative review a "charge or exaction" if the original demand itself is not a "charge or exaction." *See supra,* section 1. The result would turn *Utex* and *Toshoku* on their heads. *Utex* made clear that administrative protest is available only for "items subsumed in liquidation" of the entry. *Utex, supra,* at 1414. The issue here involves post-liquidation events and according to *Utex* does not present a protestable decision at any stage. Thus, denial of the second supplemental petition is not a protestable event.

3. *Jurisdiction to review plaintiff's claim for refund of monies under 28 U.S.C. § 1581(i)(4).*[10]

It is well settled that the jurisdiction of this court under § 1581(i) is in addition to the jurisdiction conferred by §§ 1581(a)–(h) and may not be invoked where the other means to satisfy the jurisdictional requirements were available to plaintiff. *See Di Jub, supra,* at 43, 505 F. Supp. at 1114. As demonstrated, no jurisdictional avenue was available to

---

[9] Under *Utex* and *Toshoku* plaintiff may wait to be sued and raise all defenses.

[10] The court accepts plaintiff's brief raising this jurisdictional provision as a motion to amend its complaint accordingly.

plaintiff through the protest mechanism and no other avenues of jurisdiction, apart from 28 U.S.C. § 1581(i), are alleged.[11]

Plaintiff argues that "If there is an implied obligation to pay upon demand, there must be a method of obtaining review of the claim which one has paid under that implied obligation." Plaintiff's Reply Brief at 13. Plaintiff asks the court to consider why the government should grant any mitigation, as a result of the filing of a second supplemental petition, if its actions and decisions are not reviewable by any authority. As a general rule, plaintiff is correct that there is a presumption in favor of judicial review. See *Asociacion Colombiana de Exportadores de Flores v. United States,* 13 CIT 584, 717 F. Supp. 847, 851 (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507 (1967)), *aff'd,* 903 F.2d 1555 (1989). The presumption is overcome, however, if Congress has precluded review.

Under § 1581(i)(4), this court has jurisdiction to review Customs' administration and enforcement with respect to various laws relating to imports.[12] The question here is which laws relating to imports are of concern. Plaintiff has put itself at a disadvantage by not explaining which provision or provisions of 28 U.S.C. § 1581 are of concern in addition to § 1581(i) (4), as that section only has meaning in conjunction with another § 1581 provision. Before it can rule definitively in this matter, the court requires a clear explanation of plaintiff's theory of 28 U.S.C. § 1581(i) jurisdiction, and given the time that has elapsed since the first demand, an explanation of when the cause of action accrued.

It is not at all clear that an optional administrative proceeding tolls the statute of limitations if the cause of action accrued earlier. If the cause of action accrued only with denial of the mitigation petition, plaintiff must explain why a mitigation decision is reviewable. What is more likely reviewable, though non-protestable, is the government's earlier demand. (The court uses the phrase "more likely" because of an assumption, perhaps erroneous, that Congress would not wish to foster non-payment of governmental claims by providing jurisdiction in a

---

[11] 28 U.S.C. § 1581(i) provides:

In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section * * * the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than raising revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

[12] *See National Customs Brokers and Forwarders Ass'n of America v. United States,* 13 CIT 803, 723 F. Supp. 1511 (1989) (court finds § 1581(i) (4) jurisdiction where case involves issues relating to administration of laws dealing with tariffs and administration of customs brokers licenses); *Sharp Electronics Corp. v. United States,* 13 CIT 732, 720 F. Supp. 1014 (1989) (jurisdiction exists under § 1581(i), which encompasses the administration of a settlement agreement in an antidumping action); *The National Bonded Warehouse, Ass'n., Inc. et al., v. United States,* 13 CIT 78, 706 F. Supp. 904 (1989) (jurisdiction granted under § 1581(i) (4) because assessment of annual warehouse fees relates to the administration and enforcement of a variety of import matters specified in § 1581); *Di Jub Leasing Corp. v. United States,* 1 CIT 42, 505 F. Supp. 1113 (1980) (jurisdiction granted under § 1581(i) (1) and (4) because revocation of a cartman's license pursuant to the Customs Regulations is intertwined with and directly related to the administration and enforcement of the laws providing for revenue from imports).

*Utex/Toshoku* non-payment situation and not in a case where payment is made voluntarily.)

These issues must be addressed directly. The parties may not reargue protest jurisdiction issues, but are directed to turn their attention to 28 U.S.C. § 1581(i)(4) and 28 U.S.C. § 2636(h), the applicable statute of limitations. If plaintiff wishes to pursue this matter, it shall file a supplemental brief within thirty days herein. Failure to file will be deemed a decision not to pursue a motion to amend the complaint to allege jurisdiction under 28 U.S.C. § 1581(i). Defendant will have twenty days to respond to plaintiff's supplemental brief. As these are the second set of briefs touching on the § 1581(i) issue, a reply is deemed unnecessary. No extensions of time will be provided except upon good cause.